[No. D024612. Fourth Dist., Div. One. Dec. 18, 1996.]

DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT, Plaintiff and Appellant, v. NIELSEN CONSTRUCTION COMPANY et al., Defendants and Respondents.

**COUNSEL**

Ramon Yuen-Garcia for Plaintiff and Appellant.

Booth, Mitchel & Strange and Robert C. Niesley for Defendants and Respondents.

## OPINION

**HALLER, J.**—Under California's prevailing wage law (Lab. Code,[1] § 1720 et seq.), all public works contracts involving projects of more than $1,000 require workers be paid no less than the general prevailing wage rates consisting of cash wages and fringe benefits. In this case, we are called upon to decide whether the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.) preempts California's prevailing wage law to preclude the recovery of unpaid wages for labor performed on a public works contract. We conclude the prevailing wage law is not preempted by ERISA and accordingly reverse the judgment.

## BACKGROUND

*The Prevailing Wage Law*

California's prevailing wage law for public works contracts requires that contractors pay their employees a minimum wage, called the "prevailing rate of per diem wages." (§§ 1771, 1773, 1774.) "The overall purpose of the prevailing wage law is to protect and benefit employees on public works projects. [Citation.]" (*Lusardi Construction Co.* v. *Aubry* (1992) 1 Cal.4th 976, 985 [4 Cal.Rptr.2d 837, 824 P.2d 643].) The prevailing wage is determined by the Director of the Department of Industrial Relations (Director) according to the craft, classification or type of worker needed for the project in the particular locality in which the work is to be performed. (§§ 1770, 1773.) "Per diem wages shall be deemed to include employer payments for health and welfare, pension, vacation, travel time, and subsistence pay . . . , apprenticeship or other training programs . . . and similar purposes . . . ." (§ 1773.1.)

Public works contractors required to pay their employees the prevailing wage may do so through a combination of cash and benefits. "To calculate the wage, the employer adds the hourly cash wage paid plus the total amount of employer contributions to benefits plans . . . . If this sum falls short of the prevailing wage, then the employer must make up the difference in cash." (*WSB Elec., Inc.* v. *Curry* (9th Cir. 1996) 88 F.3d 788, 791 (*WSB*).) Because a minimum cash wage must be paid, "an 'excess benefit cap'

---

[1]All statutory references are to the Labor Code unless otherwise specified.

applies, whereby employers may not credit more than a fixed amount of benefits contributions toward the prevailing wage. If the employer contributes more than the fixed amount for benefits, it is not credited in the prevailing wage calculation and the employer must make up any shortfall in cash." (*Ibid.*)

A public works contractor that fails to pay the prevailing wage to its employees is liable for the deficiency and is subject to a statutory penalty. (§ 1775.) The general contractor is also responsible for any violations of its subcontractors under the contract. (*Ibid.*; see also *O.G. Sansone Co. v. Department of Transportation* (1976) 55 Cal.App.3d 434, 445 [127 Cal.Rptr. 799].) The Division of Labor Standards Enforcement (DLSE) is the California agency charged with the investigation and enforcement of the prevailing wage requirements. (§§ 90.5, 1733, 1775, 1776.) If the money due a contractor from the "awarding body"[2] is insufficient to pay all the imposed penalties and deficiencies, or if the contract does not provide for payments by the awarding body to the contractor, DLSE is authorized to bring an action to recover the deficiencies due and penalties assessed. (§ 1775; *Lusardi Construction Co. v. Aubry, supra*, 1 Cal.4th at p. 986.)

*Facts and Procedure*

In February 1993, Nielsen Construction Company (Nielsen) entered into a contract with the San Diego Unified School District Public School Building Corporation (Building Corp.) for the construction of a public elementary school. As part of its statutory obligation under the public works contract, Nielsen purchased a performance and payment bond from Federal Insurance Company (Federal), naming Building Corp. as obligee. (Civ. Code, § 3247, subd. (a).)[3] Nielsen subcontracted the rough framing and carpentry work to Baldan Construction (Baldan).[4]

On May 20, 1993, Baldan began participating in a pension plan on behalf of its employees through a third party administrator. During construction of the school, Baldan submitted certified payroll documents weekly to Nielsen, stating: "In addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments [of] fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees . . . ."

---

[2] "Awarding body" means "department, board, authority, officer or agent awarding a contract for public work." (§ 1722.)

[3] Under the payment bond, Federal agreed to pay any of the persons named in Civil Code section 3181 with respect to any work performed on the construction project if the contractor or subcontractor failed to do so. (Civ. Code, § 3248, subd. (b).)

[4] A carpenter's total hourly rate on this project was $26.50, consisting of a cash wage of $22.10 plus $4.40 in fringe benefits.

In November 1993, Baldan stopped making contributions to the pension plan but failed to disclose this fact to its employees or to Nielsen. Three months later, Baldan defaulted on the construction project.

Following an investigation, DLSE found Baldan failed to pay its employees the full amount of the prevailing wage as required by sections 1770, 1771, 1773, 1773.1, 1774 and 1775. DLSE determined Baldan owed $46,004.30 in wages and assessed $68,150 in penalties against Nielsen. As a result, Building Corp. withheld from Nielsen $114,154.30 in earned contract funds.

DLSE sued Nielsen and Federal to enforce its claims to the wages and penalties withheld from them by Building Corp. At the same time, Nielsen sued Building Corp. and the San Diego Unified School District (School District) to recover the funds withheld. The cases were consolidated for all purposes.

Nielsen and Federal filed a motion for summary judgment on the ground DLSE's claim for wages and penalties based on the failure to pay pension benefits was preempted by ERISA. In essence, Nielsen and Federal argued DLSE had improperly attempted to supplement the remedies of ERISA by suing them rather than Baldan for unpaid pension benefits. Alternatively, Nielsen sought summary adjudication of the issue of whether DLSE's assessment of penalties against Nielsen was improper because DLSE had failed to consider the factors set forth in section 1775.[5]

After hearing, the court denied Nielsen and Federal's motion for summary judgment, finding DLSE's claim was for unpaid wages and thus was not preempted by ERISA. However, the court granted Nielsen's motion for summary adjudication of issues as to penalties on the ground no evidence supported DLSE's claim that the penalty assessment was based on statutory considerations.

Nielsen and Federal successfully moved for reconsideration of the court's denial of summary judgment. Finding ERISA preempts California's prevailing wage law, the court granted summary judgment in favor of Nielsen and

[5]Specifically, Nielsen argued (1) DLSE's first and second causes of action for wages and penalties had no merit because they were preempted by ERISA, (2) if ERISA did not preempt DLSE's claims for wages and penalties, then its claim for penalties was not meritorious because Nielsen's actions did not meet the criteria of section 1775, and (3) there was no affirmative defense to Nielsen's cause of action against Building Corp. and School District for wages and penalties because ERISA preempted those claims and because Nielsen's actions did not meet the criteria of section 1775. Federal argued DLSE's third cause of action for wages had no merit because it was preempted by ERISA and because Federal was not a proper party.

Federal. The court also granted Nielsen's request for attorney fees against DLSE, Building Corp. and School District, and Federal's request for attorney fees against DLSE in the amount of $40,486.24. DLSE appeals.

## DISCUSSION

### I. *The Notice of Appeal Was Timely Filed*

Judgment in this case was entered on July 7, 1995, and notice of entry of judgment was served by mail on July 10, 1995. On August 28, 1995, counsel for Nielsen and Federal was served with an unconformed copy of DLSE's notice of appeal. Believing it had also filed a notice of appeal with the court on August 28, 1995, counsel for DLSE requested preparation of a clerk's transcript and a reporter's transcript on September 8, 1995. When the appeals section of the superior court indicated it had not received a notice of appeal, DLSE resubmitted its notice of appeal on September 19, 1995.

Nielsen and Federal filed a motion in this court, seeking dismissal of the appeal on the ground the filing of the notice of appeal more than 60 days after notice of entry of judgment was served is an absolute bar to appellate court jurisdiction. We denied their request, determining "[t]he notice to clerk to prepare transcripts on appeal filed in San Diego Superior Court on September 8, 1995 is also treated as a timely filed notice of appeal. The resubmission of notice of appeal filed September 19, 1995 is treated as an amended notice of appeal . . . ." In their respondent's brief, Nielsen and Federal renew their position that we are without jurisdiction to consider DLSE's appeal due to its untimely filing.[6]

■ Under California Rules of Court,[7] rule 2(a)(2), a notice of appeal must be filed no later than 60 days after service of the notice of entry of judgment. Ordinarily, failure to file a notice of appeal within the time prescribed by this rule is an absolute bar to appellate court jurisdiction. (*Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 674 [125 Cal.Rptr. 757, 542 P.2d 1349].) However, "we are directed by . . . rule 1(a) to liberally construe the notice of appeal in favor of its sufficiency. The strong public policy in favor of hearing appeals on the merits operates

---

[6]Our order denying the motion to dismiss was signed by the Acting Presiding Justice and not by a panel of this court. "[A]ny determination of the merits of a cause by this court that is to bind the parties *must* have the agreement of two justices (Cal. Const., art. VI, § 3) which was not done here." (*In re Christopher A.* (1991) 226 Cal.App.3d 1154, 1161 [277 Cal.Rptr. 302], original italics.) Because our order was not law of the case, Nielsen and Federal may again challenge the timeliness of the appeal.

[7]All rule references are to the California Rules of Court.

against depriving an aggrieved party or attorney of a right to appeal because of noncompliance with technical requirements. [Citations.]" (*Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 497 [256 Cal.Rptr. 296].) Thus, when the well-established policy of according the right of appeal in doubtful cases can be implemented in accordance with applicable rules of construction and interpretation, "timely and proper notice of appeal must be deemed in law to have been filed within the jurisdictional period." (*Hollister Convalescent Hosp., Inc.* v. *Rico, supra,* 15 Cal.3d at p. 674; see also *United Farm Workers of America* v. *Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 917 [210 Cal.Rptr. 453, 694 P.2d 138].)

■ Within the 60-day period of rule 2(a), counsel for DLSE requested the superior court clerk prepare transcripts "on appeal," including documents entitled "Notice of Appeal" and "Judgment by Court under [Code of Civil Procedure section] 437c."[8] "[A] notice and demand for transcript, addressed to the clerk of the court, which contains language substantially stating that notice is given that the party filing the document 'desires and intends to appeal' or 'desires or intends to appeal' or like language is a sufficient notice of appeal to transfer jurisdiction to the appellate court even though no separate or other notice of appeal is filed. [Citations.]" (*Wilbur* v. *Cull* (1954) 127 Cal.App.2d 655, 657 [274 P.2d 424].) We construe DLSE's request for transcripts, with its references to a previously filed notice of appeal and a specific judgment being appealed, as manifesting DLSE's intent to appeal. Further, having received their own copy of DLSE's notice of appeal on August 28, 1995, Neilsen and Federal were neither misled nor prejudiced. Accordingly, we deem the notice of appeal to have been timely filed.

## II. *ERISA Does Not Preempt California's Prevailing Wage Law*

The court's order granting summary judgment and involving an issue of preemption requires us to undertake a de novo review. (*D'Aquisto* v. *Campbell Industries* (1984) 162 Cal.App.3d 1208, 1212 [209 Cal.Rptr. 108]; *Aloha Airlines, Inc.* v. *Ahue* (9th Cir. 1993) 12 F.3d 1498, 1500.)

■ Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans." (*Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 90 [77 L.Ed.2d 490, 497, 103 S.Ct. 2890]) (*Shaw*).) At the same time, Congress intended ERISA to protect employers by ensuring a

---

[8]This request is consistent with counsel's belief he had previously filed a notice of appeal with the superior court and had mailed opposing counsel a copy of it. Indeed, counsel for Neilsen and Federal acknowledged receiving a copy of the notice of appeal within the 60-day filing period.

nationally uniform administration of employee benefit plans and eliminating the threat of conflicting or inconsistent state and local regulations. (*New York Blue Cross* v. *Travelers Ins.* (1995) 514 U.S. 645, ___ [131 L.Ed.2d 695, 706, 115 S.Ct. 1671] (*Travelers*); *Shaw, supra,* 463 U.S. at p. 99 [77 L.Ed.2d at p. 502].) To further the goals of nationwide consistency and uniformity, section 514, subdivision (a) of ERISA (29 U.S.C. § 1144(a)) preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. In clarifying the scope of ERISA preemption, the United States Supreme Court has interpreted this language broadly, concluding a law " 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." (*Shaw, supra,* 463 U.S. at pp. 96-97 [77 L.Ed.2d at p. 501]; see also *Ingersoll-Rand Co.* v. *McClendon* (1990) 498 U.S. 133, 139 [112 L.Ed.2d 474, 483-484, 111 S.Ct. 478].)[9] In spite of the breadth of ERISA's preemption clause, we nevertheless "presume that Congress did not intend to pre-empt areas of traditional state regulation." (*Metropolitan Life Ins. Co.* v. *Massachusetts* (1985) 471 U.S. 724, 740 [85 L.Ed.2d 728, 740, 105 S.Ct. 2380].)

■ Nielsen and Federal characterize this case as the nonpayment of benefits into an ERISA plan and DLSE's improper attempt to supplement ERISA by using state law remedies to collect these benefits from them rather than Baldan, the fiduciary of the plan. In this regard, they claim California's prevailing wage law is preempted by ERISA to the extent it "relates to" an ERISA plan. The Ninth Circuit Court of Appeals recently rejected a similar argument in *WSB, supra,* 88 F.3d 788, holding ERISA does not preempt California's prevailing wage law. Although Nielsen and Federal argue they, unlike the plaintiffs in *WSB,* are not challenging the entire prevailing wage law, we nevertheless find the court's reasoning in that case to be persuasive and dispositive of the issue before us.

In *WSB,* two public works contractors challenged California's enforcement of its prevailing wage law, claiming it "related to" and thus was preempted by ERISA because the "prevailing wage rate is measured by

---

[9]Recently, the Supreme Court acknowledged its former construction of the phrase "relate to" in ERISA's preemption clause was unhelpful in applying principles of ERISA preemption. (*Travelers, supra,* 514 U.S. at p. ___ [131 L.Ed.2d at p. 705, 115 S.Ct. at p. 1677].) Recognizing preemption claims turn on Congress's intent, the court in *Travelers* began its analysis of the preemption issue before it by referring to the objectives of ERISA "as a guide to the scope of the state law that Congress understood would survive." (*Ibid.*) After discussing congressional intent with respect to employee welfare benefit plans, the court applied the "relate to" test set forth in *Shaw* and held the New York statute at issue did not "refer to" ERISA plans nor did it have a sufficient "connection with" such plans to warrant preemption. (*Id.* at p. ___ [131 L.Ed.2d at pp. 705-709, 115 S.Ct. at pp. 1677-1680], citing *Shaw, supra,* 463 U.S. at pp. 96-97 [77 L.Ed.2d at p. 501].)

reference to the prevailing cash wage plus the prevailing benefits contributions of employers in a given locality." (*WSB, supra*, 88 F.3d at p. 790.) The United States District Court for the Northern District of California found ERISA did not preempt the prevailing wage statute and the contractors appealed. (*Ibid.*)

Starting with the premise a state law relates to an ERISA benefit plan " 'if it has a connection with or reference to such a plan' [citations]," the Ninth Circuit Court of Appeals nevertheless recognized " '[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan.' [Citations.]" (*WSB, supra*, 88 F.3d at p. 791.) The court began its analysis with the well-settled proposition that wages are a subject of traditional state concern and their regulation is not within ERISA's coverage. (*Ibid.*, citing *Massachusetts* v. *Morash* (1989) 490 U.S. 107, 118 [104 L.Ed.2d 98, 110-111, 109 S.Ct. 1668].) Because California's prevailing wage statute regulates wages generally and not wages that are a part of a particular employee benefit plan, the court framed the issue before it as "whether the statute's effect on employee benefit plans is so attenuated that the statute cannot be said to 'relate to' ERISA plans." (*WSB, supra*, 88 F.3d at p. 792.)

Conceding employee benefits and benefit plans are mentioned in the prevailing wage statute and regulations (see §§ 1773, 1773.1; Cal. Code Regs, tit. 8, §§ 16000, 16200), the court noted "a statute 'refers to' an ERISA plan and is preempted if it mentions or alludes to ERISA plans, *and* has some effect on the referenced plans. [Citations.]" (*WSB, supra*, 88 F.3d at p. 793, original italics.) The court then concluded the references to ERISA plans in the prevailing wage law "have no effect on any ERISA plans, but simply take them into account when calculating the cash wage that must be paid. At most, this scheme provides examples of the types of employer contributions to benefits that are included in the wage calculation. The scheme does not force employers to provide any particular employee benefits or plans, to alter their existing plans, or to even provide ERISA plans or employee benefits at all. [Citation.] These provisions are enforced regardless of whether the individual employer provides benefits through ERISA plans, or whether the benefit contributions in a given locality are paid to ERISA plans. [Citation.]" (*WSB, supra*, 88 F.3d at pp. 793-794, fn. omitted.) Because California's prevailing wage law is concerned with guaranteeing a minimum cash wage for employees on public works contracts while crediting those contractors who provide fringe benefits for their employees, and because the obligation to pay the prevailing wage does not depend on the existence or operation of the employer's ERISA plans, the prevailing wage

law does not "refer to" ERISA sufficiently to justify preemption. (*Id.* at p. 794.)

In determining whether a state law relates to ERISA plans because it has a "connection with" such plans, the court in *WSB* articulated four factors to consider: whether the state law (1) regulates the types of benefits of ERISA employee welfare benefit plans, (2) requires a separate employee benefit plan be established in order to comply with the law, (3) imposes reporting, disclosure, funding or vesting requirements for ERISA plans, and (4) regulates certain ERISA relationships, such as between an ERISA plan and an employer or between an employer and employee. (*WSB, supra,* 88 F.3d at p. 794, citing *Aloha Airlines, Inc.* v. *Ahue, supra,* 12 F.3d at p. 1504.) Applying these factors, the court concluded California's prevailing wage law had an insufficient connection with ERISA to warrant preemption.

First, the court stated the "prevailing wage law clearly does not regulate the types of benefits of employee welfare benefit plans . . . ." (*WSB, supra,* 88 F.3d at pp. 794-795.) Further, California's prevailing wage law imposes no additional burden on ERISA plans nor does it require an employer to take any action with respect to those plans. Although the law may require maintenance of a separate administrative scheme for purposes of prevailing wage data, it does not require the establishment or maintenance of a separate employee benefit plan.[10] "It simply requires that [public works contractors] pay a minimum cash wage, regardless of the level of benefits provided." (*Id.* at p. 795.) In this regard, the prevailing wage law imposes no reporting, disclosure, funding or vesting requirements for ERISA plans. (*Ibid.*)

Finally, any argument the excess benefits cap provision of the prevailing wage law discourages employers from making benefits contributions in excess of the prevailing benefit rate, thereby affecting the relationship between the employer and employees, is without merit. "The economic effect of the current scheme is too tenuous, remote or peripheral to support a finding that the law 'relates to' employee benefit plans." (*WSB, supra,* 88 F.3d at p. 796.)[11]

In holding California's prevailing wage law does not refer to or have a connection with ERISA plans sufficient to find it "relates to" such plans, the

---

[10]The court acknowledged that where an employer's benefits contribution exceeds the prevailing benefit rate, it would likely adjust its contributions downward to reflect the prevailing rate. Such an incidental impact on ERISA plans, however, is indirect "and the choice of amount and type of benefits to provide remains with the private employers." (*WSB, supra,* 88 F.3d at p. 795.)

[11]Contrary to Nielsen and Federal's position, the excess benefit cap in no way restricts the employer's ability to choose a pension plan. Indeed, the prevailing wage law does not require any payments be made to such a plan.

court in *WSB* referred to its previous simplified test for preemption: " 'Is the state telling employers how to write their ERISA plans, or conditioning some requirement on how they write their ERISA plans? Or is it telling them that regardless of how they write their ERISA plans, they must do something else outside and independently of the ERISA plans? If the latter . . . there is no preemption.' " (*WSB*, *supra*, 88 F.3d at p. 796, quoting *Employee Staffing Services, Inc.* v. *Aubry* (9th Cir. 1994) 20 F.3d 1038, 1041.)

Here, California's prevailing wage law neither told Baldan how to write its ERISA plan nor did it condition some requirement on how its ERISA plan was written. Although Baldan had the option to satisfy its obligations under the law by contributing to an employee benefit plan, it likewise could have made cash payments or a combination of cash and benefit payments. Nielsen and Federal were liable under the prevailing wage law, not because Baldan failed to make contributions to the employee benefit plan, but because Baldan failed to pay its employees the prevailing wage. Where, as here, "a legal requirement may be easily satisfied through means unconnected to ERISA plans, and only relates to ERISA plans at the election of an employer, it 'affect[s] employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law "relates to" the plan.' [Citation.]" (*Keystone Chapter, Assoc. Builders* v. *Foley* (3d Cir. 1994) 37 F.3d 945, 960 (*Keystone*).)

Citing *Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co.* (1991) 53 Cal.3d 1041 [282 Cal.Rptr. 277, 811 P.2d 296] (*El Capitan*), Nielsen and Federal argue the prevailing wage law may not be used to supplement or supplant ERISA's civil enforcement scheme. Their reliance on that case, however, is misplaced. In *El Capitan*, the court held Civil Code section 3111, which creates liens on real property in favor of trust funds established under collective bargaining agreements, is preempted by ERISA. In reaching its conclusion, the court noted Civil Code section 3111 expressly refers to trust funds established under collective bargaining agreements and provides to such funds a mechanic's lien remedy not provided by Congress. Because Civil Code section 3111 "singles out" ERISA plans for special treatment and is designed to affect them specifically, it "relates to" ERISA plans. (53 Cal.3d at pp. 1049-1051.)

The court in *El Capitan* also reasoned ERISA's remedies "are exclusive and displace state laws which purport to create parallel remedies." (*El Capitan, supra*, 53 Cal.3d at p. 1053.) Because the trust fund administrator's

claim under Civil Code section 3111 is a civil action by a fiduciary to enforce the provisions of ERISA as to employer contributions and to enforce the terms of the plan, this was an improper use of state laws to supplement or supplant the civil enforcement scheme of ERISA. (53 Cal.3d at p. 1054.)

Here, in contrast, California's prevailing wage law does not "relate to" ERISA and does not regulate matters regulated by ERISA. (*WSB, supra*, 88 F.3d at p. 796.) As we previously discussed, the prevailing wage law does not single out ERISA plans for special treatment nor was it designed to affect such plans specifically. Moreover, this was not a civil action by a fiduciary to enforce employer contributions or the terms of a pension plan. Indeed, DLSE was not concerned with whether Baldan made payments into the pension plan but whether Baldan paid its employees the prevailing wage. When Baldan failed to pay the prevailing wage, both Nielsen as general contractor (§ 1775) and Federal as surety (Civ. Code, § 3248, subd. (b)) became liable for the deficiency.

Nielsen and Federal's reliance on *Dillingham Const. N.A., Inc.* v. *County of Sonoma* (9th Cir. 1995) 57 F.3d 712, certiorari granted April 15, 1996, __ U.S. __ [134 L.Ed.2d 541, 116 S.Ct. 1415], docket No. 95-789, is also misplaced. *Dillingham* involved a challenge to the apprenticeship provisions of California's prevailing wage law. (§ 1777.5.) The court held ERISA preempts a state law regulating wages in an apprenticeship program because the program itself is an employee welfare benefit plan. Thus, the court held, the prevailing wage law apprenticeship provisions directly "relate to" an ERISA plan. (57 F.3d at pp. 718-719.)[12]

The provisions of the prevailing wage law at issue here regulate wages generally and create no rights and restrictions predicated on the existence of any employee benefit plans. (*WSB, supra*, 88 F.3d at p. 792; *Mackey* v. *Lanier Collection Agency & Serv.* (1988) 486 U.S. 825, 832-834 [100 L.Ed.2d 836, 845-846, 108 S.Ct. 2182]; *United Wire, etc.* v. *Morristown Mem. Hosp.* (3d Cir. 1993) 995 F.2d 1179, 1192 [123 A.L.R.Fed. 781].) California's prevailing wage law, designed to protect and benefit employees on public works projects, is an example of the "broad authority" the states possess "under their police powers to regulate the employment relationship to protect workers within the [s]tate." (*De Canas* v. *Bica* (1976) 424 U.S. 351, 356-357 [47 L.Ed.2d 43, 49, 96 S.Ct. 933].) The prevailing wage law does not regulate any fund or program from which wages are paid, require

---

[12]*Dillingham* was recently argued before the United States Supreme Court. Regardless of the Supreme Court's decision, *Dillingham* is distinguishable from the case before us and thus is not dispositive.

the creation of a separate benefit plan or require a certain percentage or amount be paid into any benefit plan. In this regard, it fails to implicate any substantive, regulatory provision or the administrative practices regulated by ERISA. We hold ERISA does not preempt California's prevailing wage law.[13] (*WSB, supra*, 88 F.3d at p. 796; accord, *Keystone, supra*, 37 F.3d 945 [no ERISA preemption of Pennsylvania's prevailing wage statute operating identically to that of California]; *Minn. Chapter of Assoc. Builders* v. *Dept. Labor* (8th Cir. 1995) 47 F.3d 975 [no ERISA preemption of Minnesota's prevailing wage statute similar to California's where state can set a minimum cash wage and allow employer the option to pay part of it in benefits].) Accordingly, summary judgment must be reversed.

### III.  *The Judgment as to Penalties Is Also Reversed*

The parties disagree on the status of the court's order granting summary adjudication of issues as to penalties assessed against Nielsen under section 1775. Nielsen argues the penalties issue was resolved in the trial court in its favor on independent grounds and is not being appealed. Thus, Nielsen implies, regardless of the outcome of this appeal, it is not liable for the $68,150 in penalties. DLSE, for the first time in its reply brief, argues the court's order granting summary judgment on reconsideration superseded the original order so that if no wages were due, no penalties were due. DLSE purports to appeal from the entire judgment entered after reconsideration, which includes both wages and penalties.

This case comes to us in an unusual procedural posture. The court initially denied summary judgment, finding ERISA did not preempt DLSE's claims for unpaid wages, but granted summary adjudication of issues as to penalties on the ground the penalty assessment was not based on proper statutory

---

[13]ERISA is administered by the United States Secretary of Labor (29 U.S.C. § 1002) whose opinion regarding ERISA's interpretation is entitled to substantial deference by the courts. (*United States* v. *Rutherford* (1979) 442 U.S. 544, 553-554 [61 L.Ed.2d 68, 77, 99 S.Ct. 2470].) We granted DLSE's request to take judicial notice of a brief filed by the Secretary of Labor as amicus curiae in an appeal pending in the United States Court of Appeals for the Second Circuit. (*Burgio and Campofelice, Inc.* v. *NYS Dep't of Labor* (2d Cir. 1997) 107 F.3d 1000.) In its brief, the Secretary of Labor, who has primary interpretive and enforcement authority for title I of ERISA, argued ERISA does not preempt New York's prevailing wage law. That law (N.Y. Lab. Law §§ 220, 223) makes a contractor liable for the failure of a subcontractor to pay prevailing wages and supplements (i.e., benefits) to workers in connection with a public works contract. In light of the similarities between the prevailing wage laws of New York and California, we note our resolution of the preemption issue before us is consistent with the position taken by ERISA's administrator.

considerations. After Nielsen and Federal successfully sought reconsideration of that ruling, the court granted summary judgment, finding ERISA preempted California's prevailing wage law as to each cause of action.

In granting summary judgment at Nielsen and Federal's request on the ground of preemption, the court logically and inherently overruled its order granting summary adjudication as to penalties under the prevailing wage law. Once the court determined it had no jurisdiction to decide DLSE's claims in state court based on preemption principles, that ruling necessarily applied to both wages and penalties. Indeed, this is precisely the result Nielsen sought when it moved for summary judgment as to wages *and* penalties, and argued "[s]hould the court deny summary judgment, . . . Nielsen remains entitled to summary adjudication on the issue of penalties." Consistent with Nielsen's request, the "judgment" entered following the grant of summary judgment disposed of both claims on preemption grounds. Any other interpretation would result in the anomaly of a judgment that applied federal law to a claim for wages and state law to a claim for penalties where both claims derive from the same statutory scheme.[14]

Viewed in this way, DLSE's appeal of the judgment necessarily challenges the summary adjudication of issues (penalties) as well as the summary judgment (wages). Although DLSE makes no specific claim of error with respect to the penalties portion of the judgment other than to argue generally that ERISA does not preempt California's prevailing wage law, our holding applies to the entire judgment which includes both wages and penalties. " 'The effect of an unqualified reversal . . . is to *vacate* the judgment, and to leave the case "at large" for further proceedings as if . . . no judgment had ever been rendered.' [Citation.]" (*Regents of University of California* v. *Public Employment Relations Bd.* (1990) 220 Cal.App.3d 346, 356-357 [269 Cal.Rptr. 563], original italics.)

### IV. *The Issue of Attorney Fees Is Premature*

The trial court awarded Nielsen and Federal, as prevailing parties, $40,486.24 in attorney fees. In light of our reversal of the summary judgment, the order awarding attorney fees is also reversed. Until a judgment is entered in this matter, an attorney fees award is premature.

---

[14]Stated another way, once the court granted summary judgment as to wages on the ground DLSE's claim was preempted by ERISA (and therefore was not properly in state court), the summary adjudication as to penalties had no legal effect because that claim too was preempted.

## Disposition

The judgment is reversed.

Kremer, P. J., and McIntyre, J., concurred.