[No. D024462. Fourth Dist., Div. One. Mar. 5, 1998.]

LUIS ERNESTO MONREAL, Plaintiff and Appellant, v.
DANIEL JOSEPH TOBIN et al., Defendants and Respondents.

JOSE RIVERA et al., Plaintiffs and Respondents, v.
DANIEL JOSEPH TOBIN et al., Defendants, Cross-defendants and
Respondents;
LUIS ERNESTO MONREAL, Defendant, Cross-complainant and
Appellant.

## COUNSEL

Luis Ernesto Monreal, in pro. per., for Plaintiff and Appellant.

Higgs, Fletcher & Mack, John Morris and John W. Netterblad for Defendant, Cross-complainant and Appellant.

The Stafford Law Firm and George Clinton Stafford for Plaintiffs and Respondents.

No appearance for Defendants and Respondents and for Defendants, Cross-defendants and Respondents.

## OPINION

**NARES, J.**—This appeal involves consolidated personal injury and wrongful death actions which arose out of two related automobile accidents. The first accident involved plaintiff (who is also a defendant and cross-complainant) Luis Ernesto Monreal (Monreal) and defendant Daniel Joseph Tobin (Tobin). Tobin, driving about 80 miles per hour behind Monreal on Interstate 5, collided into the rear of Monreal's vehicle, which was traveling at the posted maximum speed of 55 miles per hour. The second accident occurred when, as a result of the first collision, Monreal's vehicle overturned, moved into the No. 1 "fast" lane, and was struck by another speeding vehicle driven by defendant Omar Jones (Jones), who was traveling about 75 miles per hour. Jones's two passengers were killed.

Monreal appeals[1] from the judgment entered against him, Tobin, Jones, and Courtesy Auto Rental (Courtesy, which rented the vehicle driven by Tobin). The prevailing plaintiffs, and respondents herein, are Jose Rivera

---

[1]As represented by counsel, Monreal appeals as a defendant. In his capacity as appellant in propria persona, Monreal appeals as a plaintiff.

(Rivera) individually as the husband of decedent Monica Rivera and as guardian ad litem for their minor children Monica Rivera and Erika Rivera; and Juan Borrayo, Sr., and Alma Borrayo (collectively, Borrayo), the parents of decedent Juan Borrayo, Jr., who was the brother of decedent Monica Rivera.

Monreal contends that, as a matter of law, the referee who served as trier of fact, and on whose amended decision the judgment was based, erred in finding Monreal 6 percent comparatively liable for the first accident, which involved Tobin, and 5 percent comparatively liable for the second accident, which involved Jones. These comparative fault findings and the resulting judgment in excess of $330,000 against Monreal were based on the referee's finding that although Monreal was traveling at the posted maximum speed limit of 55 miles per hour, he breached his duty of ordinary care by "remaining, apparently for a long period of time, in the No. 2 'second from the slowest' lane, and not moving over to a right lane."

We are asked to determine whether on the undisputed facts before us the referee erred in finding Monreal comparatively negligent, and thus whether the court erred in entering judgment against him. In making this determination, we must also decide as a matter of first impression whether a reasonably prudent driver of a vehicle traveling at the posted maximum speed limit in either the No. 2 lane or No. 3 lane of a dry and straight four-lane freeway, at night, and in light traffic during clear weather, owes to other drivers and any involved passengers a common law duty of ordinary care or a statutory duty to move his or her vehicle to the right into the next slower lane when another driver approaches from behind in the same lane at a speed in excess of the posted maximum speed limit.

For reasons we shall discuss, we conclude as a matter of law that a driver in these circumstances has no legal duty to move to the right into the next slower lane even if, as here, other traffic is traveling in excess of the posted maximum speed limit. We further conclude such driver cannot be held comparatively liable for any resulting damages if the speeding vehicle approaching from behind in the same lane collides into the rear of the law-abiding driver's vehicle. Accordingly, we also conclude the referee erred in finding Monreal comparatively negligent, and the court erred in entering judgment against him.

We also deny Rivera and Borrayo's motion to dismiss this appeal. For reasons we shall explain, we conclude this appeal is timely.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The accident*

On January 19, 1991, in the early morning hours after midnight, Monreal was driving his vehicle northbound near the city of Encinitas on a straight portion of Interstate 5, which has four lanes and a shoulder. The posted maximum speed limit was 55 miles per hour, but traffic generally traveled in excess of 65 miles per hour. Monreal was driving at 55 miles per hour. Traffic was light, and the weather was clear and dry.

The record is not clear whether Monreal was driving in the No. 2 "second from the fastest" lane (as Rivera and Borrayo contend), or whether he was driving in the No. 3 "second from the slowest lane" (as Monreal contends).[2] Monreal's vehicle was struck from behind by a vehicle owned by Courtesy and driven by Tobin, who was traveling in the same lane about 80 miles per hour. As a result of the collision, Monreal's vehicle was forced into the center divider where it overturned, slid on its roof, and came to rest blocking the No. 1 "fast" lane.

After Monreal climbed out the back window of his vehicle, his leg was clipped by another speeding northbound vehicle driven by Jones, traveling about 75 miles per hour, which then struck Monreal's vehicle. Two passengers riding in Jones's vehicle, Rivera's wife Monica Rivera and her brother Juan Borrayo, Jr., were ejected and killed. Monreal was injured.

2. *The lawsuits and trial by general reference*

Monreal filed a complaint against Tobin, Jones, and Courtesy.[3] Rivera and Borrayo filed a joint wrongful death complaint against Tobin, Jones, Courtesy, and Monreal.[4] A third action and various cross-complaints were filed. The cases were consolidated and tried in October 1994 before a referee pursuant to a written stipulation for general reference under Code of Civil Procedure section 638.

The trial evidence consisted of live and deposition testimony by the various parties and percipient witness, including two reporting California

---

[2]The California Highway Patrol traffic collision report indicated the vehicles driven by Monreal and Tobin were in the No. 2 lane. The amended decision of the referee found the vehicles were in the "No. 2 'second from the slowest' lane." For purposes of determining the purely legal issues presented in these appeals, it is immaterial whether Monreal and Tobin were in the No. 2 lane or No. 3 lane.

[3]Monreal v. Tobin. (Super. Ct. San Diego County, 1992, No. N53734).

[4]Rivera v. Tobin (Super. Ct. San Diego County, 1992, No. N54331).

Highway Patrol officers, and opinion testimony by five expert witnesses. The trial proceedings were not transcribed, and none of the parties requested a statement of decision from the referee.

3. *The "Amended Referee's Decision" and objections thereto*

Because the remaining procedural history of this case is relevant to Rivera and Borrayo's pending motion to dismiss, we recite this history in some detail.

On December 15, 1994, the referee filed his "Amended Referee's Decision," which the court entered as a purported judgment on January 31, 1995. With respect to the first collision involving only Tobin and Monreal, the referee found that Tobin was 94 percent at fault, and Monreal was 6 percent at fault.

The referee also found the first collision was a significant factor in the causation of the second accident, which involved the collision between Jones and Monreal's vehicles, and resulted in the deaths of Monica Rivera and Juan Borrayo, Jr. With respect to this second accident, the referee determined the comparative fault of the parties and found Tobin 80 percent responsible, Jones 15 percent responsible, and Monreal 5 percent responsible.

With respect to the wrongful death claims brought by the heirs of Monica Rivera, the referee found all the defendants (Tobin, Courtesy, Jones, and Monreal) jointly and severally liable to the heirs for economic damages in the amount of $249,113. The referee also found Monreal individually liable in the additional amount of $50,000, which represented his 5 percent comparative fault share of the $1 million award for noneconomic damages.[5]

With respect to the wrongful death claim brought by the parents of Juan Borrayo, Jr., the referee found Monreal liable in the amount of $32,500, which represented his 5 percent comparative fault share of the $650,000 in noneconomic damages awarded by the referee.[6] Thus, the referee awarded damages in favor of the heirs and against Monreal in an amount exceeding $330,000.

On December 23, 1994, Monreal filed a written objection to the "Amended Referee's Decision" on the ground the referee erroneously found Monreal comparatively negligent.

---

[5]The referee also awarded $800,000 in noneconomic damages against Tobin, and $150,000 in noneconomic damages against Jones.

[6]The referee also awarded $520,000 in noneconomic damages against Tobin, and $97,500 in noneconomic damages against Jones.

4. *Monreal's motion to set aside portion of "Amended Referee's Decision" and for entry of judgment in his favor*

On December 28, 1994, Monreal filed a noticed motion for an order setting aside the portion of the "Amended Referee's Decision" finding him comparatively negligent, and for entry of judgment in his favor. This motion was based on the ground the comparative fault finding was an erroneous conclusion of law.

On February 3, 1995, after hearing oral argument on Monreal's motion, the court confirmed its telephonic ruling denying Monreal's motion.

5. *Monreal's request for clarification of referee's decision*

Following oral argument on his motion to set aside a portion of the "Amended Referee's Decision," Monreal asked the referee to clarify the meaning of the phrase "under the circumstances" found in the portion of the "Amended Referee's Decision" which stated: ". . . I simply find [Monreal] negligent for going approximately 55 miles per hour, and remaining in that lane *under the circumstances*." (Italics added.)

6. *Entry of "judgment" and notice of entry of "judgment"*

On January 31, 1995, the "Amended Referee's Decision" was entered as the purported "judgment" in this matter.

On February 3, 1995, Rivera and Borrayo served all parties with notice of entry of judgment. Monreal's attorneys received the notice on February 6, 1995.

7. *"Second Amendment to Amended Referee's Decision"*

On March 6, 1995, in response to Monreal's request for clarification of the phrase "under the circumstances" in the "Amended Referee's Decision," the referee filed and served his "Second Amendment to Amended Referee's Decision" in which he stated the phrase meant "it was dark and in the early morning hours; traffic was light; the weather was clear and dry; the four-lane northbound freeway was essentially straight, and traffic was relatively light."

On March 8, 1995, the "Second Amendment to Amended Referee's Decision" was entered in the judgment book.

8. *Monreal's motion to tax costs claimed by Rivera and Borrayo*

On February 16, 1995, Rivera and Borrayo filed their "Amended Memorandum of Costs" in which they requested costs in the amount of $15,820. In

response, Monreal filed a motion to tax various items of cost claimed by Rivera and Borrayo.

On March 20, 1995, the court issued a telephonic ruling minute order which granted Monreal's motion to tax costs in part, and denied it in part.

### 9. *Monreal's motion for reconsideration*

On March 13, 1995, based on the referee's clarification of the phrase "under the circumstances," Monreal filed a motion for reconsideration of the court's previous ruling denying his motion to set aside the portion of the "Amended Referee's Decision" which found him comparatively negligent. In his motion Monreal again argued the referee's comparative negligence finding against him was an erroneous conclusion of law. The court agreed to hear the motion.

On April 28, 1995, following oral argument, the court denied Monreal's motion for reconsideration and stated: "[T]he referee . . . found that [Monreal] had breached his duty as set forth in BAJI [No.] 5.00 when he failed to move over after the long period of time when those around him . . . had chosen to travel in excess of the speed limit. So your obligation is to use care for conditions that exist. Mind you, its sounds ludicrous, but it is the idea that, no matter the posted speed limit, that is the overriding requirement."

### 10. *Amended judgment*

On June 16, 1995, the court filed an "Amended Judgment" which, unlike the "Amended Referee's Decision" entered as a purported "judgment" in the judgment book on January 31, 1995, contained standard judgment language (e.g., "IT IS ORDERED, ADJUDGED, AND DECREED THAT JUDGMENT HEREIN BE AMENDED AND ENTERED as follows . . . ."). The "Amended Judgment" added amounts awarded by the court as costs and interest, and included a detailed assessment of the allocation of damages in favor of each plaintiff and against each defendant. Unlike the "Amended Referee's Decision," which was signed by the referee, the "Amended Judgment" was signed by the court.

On June 22, 1995, this "Amended Judgment" was entered in the judgment book. There is nothing in the record on appeal to show that a notice of entry of the "Amended Judgment" was served on any of the parties.

### 11. *Monreal's notice of appeal*

On July 31, 1995, Monreal filed his notice of appeal. The notice of appeal states Monreal "appeals from the Amended Judgment filed on June 16, 1995."

12. *Rivera and Borrayo's pending motion to dismiss this appeal*

On February 20, 1996, after Monreal filed his appellant's opening brief in this matter on January 19, 1996, Rivera and Borrayo filed a motion to dismiss Monreal's appeal on the grounds Monreal did not timely file his notice of appeal and we lack jurisdiction to hear it.

On March 29, 1996, we issued an order which stated in part, "A ruling on respondent's motion to dismiss the appeal as untimely is deferred until the matter is considered on the merits. . . ."

DISCUSSION

I. *Monreal's Notice of Appeal Was Timely Filed*

Rivera and Borrayo have filed in this court a joint motion to dismiss this appeal on the grounds Monreal failed to file his notice of appeal within the time specified in rules 2 and 3 of the California Rules of Court,[7] and thus we lack jurisdiction to entertain this appeal. We disagree, and conclude Monreal filed his notice of appeal in a timely manner. Accordingly, we deny the motion to dismiss.

1. *Applicable law*

Except as otherwise provided by law, a notice of appeal must be filed within the applicable time prescribed by rules 2(a) and 3. Rule 2(a) sets forth three possible filing deadlines, and provides in part: "[A] notice of appeal . . . shall be filed on or before the earliest of the following dates: (1) 60 days after the date of mailing by the clerk of the court of a document entitled 'notice of entry' of judgment; (2) 60 days after the date of service of a document entitled 'notice of entry' of judgment by any party upon the party filing the notice of appeal, or by the party filing the notice of appeal; or (3) 180 days after the date of entry of the judgment."

 Although there is no inherent court power to extend the applicable time for appeal or otherwise excuse an untimely civil appeal (*Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 666-667 [125 Cal.Rptr. 757, 542 P.2d 1349]), certain extensions of time are authorized by rule 3. Of relevance to the instant appeal is rule 3(b), which extends the time for any party to appeal a judgment until the earliest of three potential dates, and provides in part: "When a valid notice of intention to move to vacate a judgment or to vacate a judgment and enter another and different judgment

---

[7]All rule references are to the California Rules of Court.

is served and filed by any party on any ground within the time in which, under rule 2, a notice of appeal may be filed, or such shorter time as may be prescribed by statute, the time for filing the notice of appeal from the judgment is extended for all parties until the earliest of 30 days after entry of the order denying the motion to vacate; or 90 days after filing the first notice of intention to move to vacate the judgment; or 180 days after entry of the judgment."

Ordinarily, failure to file a notice of appeal within the time prescribed by rule 2(a) is an absolute bar to appellate court jurisdiction. (*Hollister Convalescent Hosp., Inc.* v. *Rico, supra,* 15 Cal.3d at p. 674.) However, as we explained in *Department of Industrial Relations* v. *Nielsen Construction Co.* (1996) 51 Cal.App.4th 1016, 1023-1024 [59 Cal.Rptr.2d 785]: ". . . 'we are directed by . . . rule 1(a)[8] to liberally construe the notice of appeal in favor of its sufficiency. The strong public policy in favor of hearing appeals on the merits operates against depriving an aggrieved party or attorney of a right to appeal because of noncompliance with technical requirements. [Citations.]' [Citation.] Thus, when the well-established policy of according the right of appeal in doubtful cases can be implemented in accordance with applicable rules of construction and interpretation, 'timely and proper notice of appeal must be deemed in law to have been filed within the jurisdictional period.' [Citations.]" Accordingly, we liberally construe Monreal's notice of appeal.

## 2. *Analysis*

In support of their motion to dismiss this appeal, Borrayo and Rivera contend the jurisdictional deadline for the filing of Monreal's notice of appeal was May 28, 1995. In support of this contention they assert that (1) the referee's "Amended Referee's Decision" was entered (on Jan. 31, 1995) as the final judgment in this matter; (2) they served all parties with notice of entry of judgment on February 3, 1995, thus commencing the 60-day appeal period prescribed by rule 2(a)(2); and (3) under rule 3(b), Monreal's timely "Motion to Set Aside Erroneous Conclusion of Law in Amended Referee's Decision and for Entry of Judgment in Favor of Defendant" extended the deadline for the filing of Monreal's notice of appeal until 30 days after April 28, 1995, the date the court finally denied Monreal's motion.

Borrayo and Rivera further contend that because Monreal filed his notice of appeal on July 31, 1995, beyond the purported May 28, 1995, deadline, this court lacks jurisdiction to entertain this appeal. We disagree with these contentions.

---

[8]Rule 1(a) provides in part: "A notice of appeal shall be liberally construed in favor of its sufficiency."

Although the "Amended Referee's Decision" was entered as a purported "judgment" in this matter on January 31, 1995, in our view it did not constitute a final judgment from which Monreal could have properly appealed, and thus the running of the 60-day appeal period under rule 2(a)(2) did not commence with the service by Borrayo and Rivera of their purported "Notice of Entry of Judgment" on February 3, 1995. As we have discussed, Monreal had requested that the referee clarify the phrase "under the circumstances" as that phrase was used in the "Amended Referee's Decision,"[9] and the referee provided the requested clarification in his "Second Amendment to Amended Referee's Decision" which was not entered in the judgment book until March 8, 1995. The clarification provided by the referee was relevant to this appeal, as counsel for Borrayo and Rivera conceded during the ex parte proceeding on June 16, 1995,[10] at which Borrayo and Rivera sought an order amending the purported January 1995 "judgment" to include an award of costs and interest based on the court's ruling on March 20, 1995, regarding Monreal's motion to tax costs.

On June 16, 1995, following the ex parte proceeding, the court filed an "Amended Judgment" which, unlike the "Amended Referee's Decision" entered as the purported "judgment" in the judgment book on January 31, 1995, contained standard judgment language (e.g., "IT IS ORDERED, ADJUDGED, AND DECREED THAT JUDGMENT HEREIN BE AMENDED AND ENTERED as follows . . . ."). The "Amended Judgment" also added amounts awarded by the court as costs and interest, and included a detailed assessment of the allocation of damages in favor of each plaintiff and against each defendant. Unlike the "Amended Referee's Decision," which was signed by the referee, the "Amended Judgment" was signed by the court.

On June 22, 1995, this "Amended Judgment" was entered in the judgment book. There is nothing in the record on appeal to show that a notice of entry of the "Amended Judgment" was served on any of the parties.

We conclude for purposes of this appeal that the "Amended Judgment" entered on June 22, 1995, rather than the "Amended Referee's Decision" entered on January 31, 1995, is the final judgment in this matter. Because

---

[9]As we have discussed, Monreal asked the referee to clarify the meaning of the phrase "under the circumstances" found in the portion of the "Amended Referee's Decision" which stated: ". . . I simply find [Monreal] negligent for going approximately 55 miles per hour, and remaining in that lane *under the circumstances*." (Italics added.)

[10]As shown by the reporter's transcript of the June 16, 1995, ex parte proceeding, counsel for Borrayo and Rivera stated, "I think if you look at the first and second amendments from the referee, those are mostly statements or statements to his reasoning which *were more applicable to the appeal aspects of this*, rather than his final findings."

Monreal filed his notice of appeal about five weeks later on July 31, 1995, we further conclude Monreal properly filed his notice of appeal within the time prescribed by rule 2, and we thus have jurisdiction over this appeal.

## II

*The Referee Erred as a Matter of Law in Finding Monreal Comparatively Negligent, and the Court Thus Erred in Entering Judgment Against Monreal*

Monreal argues the referee erred as a matter of law in finding that although he was traveling at the maximum posted speed limit of 55 miles per hour at the time of the accident, Monreal was 6 percent comparatively negligent with respect to the first accident, which involved Tobin, and 5 percent comparatively negligent with respect to the second accident, which involved Jones. Monreal also maintains the court erred in denying his motion to set aside the judgment entered against him. For reasons we shall discuss, we agree with these arguments.

### A. *Standard of Review*

Rivera and Borrayo contend that Monreal is challenging the referee's "finding of ultimate fact" that Monreal "was negligent when 'he should have moved over but didn't.' " They also contend we must presume the referee made all factual findings necessary to support the judgment against Monreal, and thus the only issue on appeal is whether the "implied findings" are supported by substantial evidence. We reject these contentions and conclude that our review is de novo.

An action in negligence requires a showing that the defendant owed the plaintiff a legal duty to use due care, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207]; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, p. 60.) A defendant thus cannot be held liable in tort for negligence unless the defendant owed the plaintiff a legal duty.

As Witkin notes, the legal duty to use due care may be of two general types: (1) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated; and (2) an affirmative duty where the person has a particular relationship to others. (6 Witkin, Summary of Cal. Law, *supra*, § 732, at p. 61.) With regard to the first type of legal duty, the person is not liable unless he or she is actively careless; with regard to the

second, he or she may be liable for failure to act affirmatively to prevent harm. (*Ibid.*)

Thus, in considering whether a person had a legal duty in a particular factual situation, a distinction must be made between claims of liability based upon misfeasance and those based upon nonfeasance. (*Jackson* v. *Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1838 [20 Cal.Rptr.2d 913].) "Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention. . . . [L]iability for nonfeasance is largely limited to those circumstances in which some special relationship can be established. If, on the other hand, the act complained of is one of misfeasance, the question of duty is governed by the standards of ordinary care . . . ." (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 49 [123 Cal.Rptr. 468, 539 P.2d 36].)

■ While breach of duty and causation normally present factual questions for the trier of fact, the existence of a legal duty in a given factual situation is a question of law for the courts to determine. (*Jackson* v. *Ryder Truck Rental, Inc., supra*, 16 Cal.App.4th at p. 1838.) Accordingly, we determine de novo the existence and scope of the duty owed by Monreal to Rivera, Borrayo, and their decedents.

B. *Monreal did not owe a common law or statutory duty to move into the next slower lane*

Monreal does not dispute that as a driver on northbound Interstate 5 on the night of the fatal accident from which these actions arose, he owed the general duty of care set forth in BAJI No. 5.00 (Duty of the Driver of Vehicle on Public Highway), which states a vehicle driver's general duty of care where, as here, no specific Vehicle Code violation is involved. (See Use Note, BAJI No. 5.00 (8th ed. 1994 bound vol.) p. 136.) BAJI No. 5.00 provides: "It is the duty of the driver of any vehicle using a public street or highway to exercise ordinary care at all times to avoid placing the driver or others in danger; [and] to use like care to avoid an accident; [to keep a proper lookout for traffic and other conditions to be reasonably anticipated] [and] [to maintain a proper control of the vehicle]."

This appeal involves the *scope* of the general *common law* duty to use ordinary care which Monreal owed Rivera, Borrayo and their decedents. ■ Specifically, in determining the scope of this duty we must decide as a matter of first impression whether a reasonably prudent driver of a vehicle

traveling at the posted maximum speed limit in either the No. 2 lane or No. 3 lane of a dry and straight four-lane freeway, at night, and in light traffic during clear weather, owes a common law duty of ordinary care to other drivers and any involved passengers to move his or her vehicle to the right into the next slower lane if another driver approaches from behind in the same lane at a speed in excess of the posted maximum speed limit. This appeal also involves the issue of whether such a driver owes a *statutory* duty under these circumstances to move his or her vehicle into the next slower lane.

For reasons we shall discuss, we hold as a matter of law that a driver has no common law or statutory duty under the undisputed driving conditions involved here to move to the right into the next slower lane even if, as here, other traffic is traveling in excess of the posted speed limit. We thus also conclude that such a driver cannot be held comparatively liable for any resulting damages if the speeding vehicle approaching from behind in the same lane collides into the rear of the law-abiding driver's vehicle.

■ "In determining whether the defendant owed a duty of due care to the plaintiff in a given case, the courts have applied the balancing test derived from *Rowland* v. *Christian*[(1968)] 69 Cal.2d [108,] 113 [70 Cal.Rptr. 97, 443 P.2d 561]: '. . . [T]he major [considerations] are the foreseeability of harm to the plaintiff, the degree of certainty the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Jackson* v. *Ryder Truck Rental, Inc.*, *supra*, 16 Cal.App.4th at pp. 1838-1839.) ■ As we shall explain, each of these factors weighs in favor of concluding that Monreal did not owe a duty of care to move his vehicle to the right into the next slower lane when Tobin's vehicle approached from behind in the same lane at a speed in excess of the posted maximum speed limit of 55 miles per hour.

1. *Foreseeability of harm to Rivera, Borrayo and their decedents*

The undisputed facts established that at the time Tobin drove his vehicle into the rear of Monreal's vehicle, initiating a sequence of events which resulted in the deaths of two of Jones's passengers, Monreal was driving his vehicle northbound near the city of Encinitas in the early morning hours after midnight on a straight portion of Interstate 5, which has four lanes and a shoulder. The posted maximum speed limit was 55 miles per hour, but traffic generally traveled in excess of 65 miles per hour. Monreal was

driving at 55 miles per hour. Traffic was light, and the weather was clear and dry. The record is not clear whether Monreal was driving in the No. 2 "second from the fastest" lane (as Rivera and Borrayo contend), or whether he was driving in the No. 3 "second from the slowest lane" (as Monreal contends). However, in our view it is immaterial for purposes of deciding the issue of duty whether Monreal and Tobin were in the No. 2 lane or No. 3 lane. In either scenario Tobin could have passed Monreal's vehicle on the left as required by law.

While traveling about 80 miles per hour in the same lane behind Monreal, Tobin drove his vehicle into the rear of Monreal's vehicle. As a result of this first collision, Monreal's vehicle was forced into the center divider where it overturned, slid on its roof, and came to rest blocking the No. 1 "fast" lane. After Monreal climbed out the back window of his vehicle, his leg was clipped by another speeding northbound vehicle driven by Jones, traveling about 75 miles per hour, which then struck Monreal's vehicle. Two passengers riding in Jones's vehicle, Rivera's wife and her brother, were ejected and killed. Monreal was injured.

On these undisputed facts we conclude a reasonably prudent driver in the same circumstances under which Monreal was driving would not have reasonably foreseen that Tobin, rather than moving his vehicle to the left and passing in the next faster lane, would drive his vehicle into the rear of the vehicle in front of him, causing it to flip over, block the No. 1 fast lane, and be struck by another speeding vehicle resulting in two deaths.

Monreal was driving at a lawful speed. It is undisputed he was traveling at the posted maximum speed limit of 55 miles per hour. There is nothing in the record to indicate he was in violation of the "basic speed law" in California which is codified in Vehicle Code[11] section 22350, and provides: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

There is also nothing in the record to indicate Monreal was in violation of the "minimum speed law" codified in section 22400, subdivision (a), which provides: "No person shall drive upon a highway at such a slow speed as to impede or block the normal and *reasonable* movement of traffic unless the reduced speed is necessary for safe operation, because of a grade, or in compliance with law." (Italics added.) Here, even though other vehicles at the scene of the accident "normally" traveled at 65 miles per hour, it is

---

[11]Subsequent statutory references are to the Vehicle Code.

undisputed that traffic was light at the time of the accident. Because the posted maximum speed limit was 55 miles per hour, the movement of surrounding traffic at 65 miles per hour cannot be deemed a "reasonable" movement of traffic within the meaning of section 22400, subdivision (a).

We further conclude there is nothing to indicate Monreal violated the "slow-moving vehicles" law codified in section 21654, subdivision (a) which provides: "Notwithstanding the prima facie speed limits, any vehicle proceeding upon a highway at a speed less than the normal speed of traffic moving in the same direction at such time shall be driven in the right-hand lane for traffic or as close as practicable to the right-hand edge or curb, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway." In any event, the referee expressly stated in his "Amended Referee's Decision" that he was not deciding whether there was a violation of section 21654, and this issue is not before us.

Because the undisputed facts show Monreal was obeying applicable traffic laws when Tobin drove into his vehicle, we believe a reasonably prudent person in Monreal's situation would have reasonably assumed that Tobin would pass on the left in the next faster lane, as he was legally obligated to do under the "overtake and pass to the left" law codified in section 21750, which provides: "The driver of a vehicle overtaking another vehicle or a bicycle proceeding in the same direction shall pass to the left at a safe distance without interfering with the safe operation of the overtaken vehicle or bicycle, subject to the limitations and exceptions hereinafter stated." Even though Tobin was speeding before the collision, a reasonably prudent driver in Monreal's position would not have anticipated that Tobin would cause his vehicle to collide with the vehicle in front of him. BAJI No. 3.13 (Right to Assume Others' Good Conduct) provides: "Every person who is exercising ordinary care, has a right to assume that every other person will perform [his] [her] duty [and obey the law], and in the absence of reasonable cause for thinking otherwise, it is not negligence for such person to fail to anticipate an accident which can occur only as a result of a violation of [law] [or] [duty] by another person."

Thus, we conclude it was not reasonably foreseeable that Monreal's failure to move his vehicle to the right in the next slower lane would result in the deaths of Rivera and Borrayo's decedents.

2. *The closeness of connection between Monreal's alleged negligence and the victims' harm*

As the discussion above suggests, this factor weighs heavily in Monreal's favor when the nature of the risk the decedents encountered is properly

defined. In our view there was no connection between Monreal's failure to move his vehicle to the right into the next slower lane and the two collisions from which these actions arose. The undisputed facts show that Monreal was driving in a reasonably prudent manner, the first collision was caused by Tobin's unlawful speeding and failure to pass Monreal's vehicle on the left, and the second collision was caused by Tobin's negligence and Jones's unlawful speeding.

### 3. The moral blame attaching to Monreal's conduct

Because Monreal was driving in a reasonably prudent manner at the time of the accident, no moral blame attaches to his conduct. The entire moral blame attaches to Tobin and Jones, whose negligent driving was the legal cause of the collisions.

### 4. The policy of preventing future harm

Because we conclude it was not reasonably foreseeable that Monreal's failure to move his vehicle to the right into the next slower lane would result in the collisions and injuries from which these actions arose, the imposition of liability on Monreal does not serve the policy of preventing future harm. On the contrary, exonerating Monreal of liability would reward him for obeying traffic laws and driving in a reasonably prudent manner, and imposing all liability on Tobin and Jones, whose negligence caused the injuries, would serve to deter them and others similarly situated from driving in such an unlawful manner.

### 5. The impact on the community and the burden on Monreal from imposing a legal duty with resulting liability for breach

The referee's decision to hold Monreal partially responsible for the collisions and injuries at issue here has resulted in the entry of a judgment against Monreal in an amount exceeding $330,000. Such a result is egregiously unfair and unduly burdensome to Monreal, who was driving in a reasonably prudent manner at the time of the accident. We believe the impact on the community at large would also be unduly burdensome because it is unlikely most prudent drivers, who (like Monreal) might suffer a large tort judgment under similar circumstances, carry sufficient automobile liability insurance to cover such a loss.

In conclusion, after careful consideration of these various factors in light of the undisputed facts involved in this case, we conclude Monreal did not owe a common law or statutory duty to move his vehicle to the right into the

next slower lane when Tobin's vehicle approached from behind in the same lane at a speed in excess of the posted maximum speed limit of 55 miles per hour. Accordingly, because Monreal owed no such duty we also conclude the referee erred in finding Monreal comparatively negligent, and the court erred in entering judgment against Monreal based on the referee's finding.

C. *Monreal did not breach a common law or statutory duty*

Apart from our determination that as a matter of law Monreal owed no statutory or common law duty to move his vehicle into the next slower lane, we further conclude he did not breach any statutory or common law duty by remaining in the lane in which he and Tobin were traveling when Tobin's vehicle collided into the rear of Monreal's vehicle.

As we have discussed, the referee made a finding that Monreal was "negligent for going approximately 55 miles per hour, and remaining in that lane under the circumstances." This finding of comparative negligence is necessarily based on an implied finding that Monreal breached his duty of ordinary care under BAJI No. 5.00. As we have also noted, Monreal does not dispute that as a driver on northbound Interstate 5 on the night of the fatal accident from which these actions arose, he owed the general duty of care set forth in BAJI No. 5.00.

On the undisputed factual record before us, we conclude as a matter of law Monreal did not breach his general duty of care. On the contrary, the undisputed facts establish Monreal was driving with due care at the maximum posted speed limit of 55 miles per hour and did nothing to place Tobin or anyone else "in danger" within the meaning of BAJI No. 5.00.

Similarly, there is nothing in the undisputed factual record record to suggest Monreal breached any statutory duty. On the contrary, the undisputed facts establish that Tobin, who was driving his vehicle at the illegal speed of 80 miles per hour in the same lane behind Monreal, who failed to obey the statutory speed law set forth in section 22350, and who failed to pass Monreal's vehicle to the left in the open No. 1 "fast" lane as required by section 21750, was entirely at fault for his collision into the rear of Monreal's vehicle.

In conclusion, because Monreal breached no common law or statutory duty, the referee erred in finding him comparatively negligent and the court erred in entering judgment against him.

DISPOSITION

While otherwise affirming the judgment, we reverse those portions of the judgment imposing liability on Monreal, and remand this matter to the trial court for further proceedings consistent with this opinion, with instructions to enter an amended judgment which reallocates to Tobin and Jones the portion of comparative liability imposed against Monreal in the current judgment. Monreal shall recover costs on appeal.

Huffman, Acting P. J., and McIntyre, J., concurred.