[No. H003795. Sixth Dist. Apr. 19, 1989.]

BEATRICE L. ELLIOTT et al., Plaintiffs and Respondents, v.
DONALD ALBRIGHT et al., Defendants and Appellants.

COUNSEL

Robert D. Feighner, Philip McLeod and Keesal, Young & Logan for Defendants and Appellants.

Don Roberson and Dewar, Romig & Rockwood for Plaintiffs and Respondents.

OPINION

**PREMO, J.**—Defendants Donald Albright, and Paine, Webber, Jackson & Curtis (hereafter Paine Webber) appeal from the denial of their motion to compel arbitration of plaintiffs' claim under section 17(a) of the Securities Act of 1933 [15 U.S.C.A. § 77q] (hereafter 1933 Act).

Plaintiffs Beatrice L. Elliott, Jeanne E. Hubbard, Roy K. Hubbard, William J. Hubbard, Abdallah Moussa, Robert J. Parsons, and Richard B. Frazer filed a complaint in 1986 containing 56 causes of action under California law, the 1933 Act, and the Racketeer Influenced and Corrupt Organization Act, 18 United States Code Annotated section 1961 et seq. (hereafter RICO). They alleged fraud, breach of fiduciary duty, excessive trading, and other mishandling of their accounts by their broker, Akiva Bar, with the knowledge and control of his supervisor, Albright, at Paine Webber's Monterey office. On motion of defendants, the RICO and state law claims were ordered to arbitration.[1] The defendants had specifically excluded the 1933 Act claims from their request for arbitration, but had unsuccessfully sought a stay pursuant to Code of Civil Procedure section 1281.4 and section 3 of the Federal Arbitration Act (9 U.S.C.A. § 3) while the state and RICO claims were arbitrated.[2]

In June 1987, the United States Supreme Court enforced a predispute arbitration agreement between a brokerage house and its customer and required arbitration of claims under RICO and the 1934 Securities Exchange Act (hereafter the 1934 Act). (*Shearson/American Express, Inc.* v. *McMahon* (1987) 482 U.S. 220 [96 L.Ed.2d 185, 107 S.Ct. 2332].) With this change of law, defendants promptly moved in the trial court for arbitration of the 1933 Act claims. They reasoned that the concerns discussed by the

---

[1] The customer's agreements signed by plaintiffs provided either: "Any controversy between us arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining of either the Arbitration Committee of the New York Stock Exchange[,] American Stock Exchange[,] National Association of Securities Dealers[,] or where appropriate[,] Chicago Board Option Exchange, or Commodities Futures Trading Commission, as I may elect"; or, "Any controversy between us arising out of or relating to this contract, breach thereof, or any account(s) maintained with you (except any claim for relief by a public customer for which a remedy may exist pursuant to an expressed or implied right of action under the federal securities laws) shall be settled by arbitration in accordance with the rules in effect of either the New York Stock Exchange, Inc., American Stock Exchange, Inc., National Association of Securities Dealers, Inc., or where appropriate, the Chicago Board Options Exchange or National Futures Association, as the undersigned may elect."

[2] On October 3, 1986, the court issued a minute order stating the following: "Argument is presented and arbitration is denied as to 1933 Securities Act, taken under submission as to the RICO Act and arbitration is ordered as to all other issues. 20 days to answer. The Court orders no stay." Also dated October 3, 1986, the court issued a minute order entitled "Order After Submission" which granted Paine Webber's motion to arbitrate the RICO causes of action. Finally, in a formal order dated October 23, 1986, the court stated: "Defendants herein have brought motions to compel arbitration and for a stay. After a hearing on the matter on October 3, 1986, [¶] IT IS HEREBY ORDERED THAT: [¶] 1. Plaintiffs' state law and RICO claims are ordered to arbitration, to wit, all claims except the Sixth, Fourteenth, Twenty-second, Thirtieth, Thirty-eight[h], Forty-sixth and Fifty-fourth Claims. [¶] 2. The claims remaining, listed above, are to proceed on their normal course. Defendants' motion for a stay is denied. Defendants shall file a responsive pleading to these claims on or before October 23, 1986."

*McMahon* court in compelling arbitration of the claims under the 1934 Act applied equally well to the 1933 Act. However, the trial court applied *Wilko* v. *Swan* (1953) 346 U.S. 427 [98 L.Ed. 168, 74 S.Ct. 182], and denied the motion.

The sole issue on this appeal from the denial of the motion is whether the reasoning of *McMahon* requires the court to compel arbitration of plaintiffs' 1933 Act claims.[3]

## BACKGROUND

The Federal Arbitration Act of 1925, 9 United States Code Annotated section 1 et seq., reversed centuries of judicial hostility to arbitration agreements (*Scherk* v. *Alberto-Culver Co.* (1974) 417 U.S. 506, 510-511 [41 L.Ed.2d 270, 276, 94 S.Ct. 2449]), and established a "federal policy favoring arbitration" (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 785, 103 S.Ct. 927]). However, courts still refused to compel arbitration of claims of securities purchasers arising under the 1933 and 1934 Acts. (*Wilko, supra,* 346 U.S. 427; *McMahon, supra,* 482 U.S. at p. 224 [96 L.Ed.2d at p. 192].)

In the leading case, *Wilko,* the court held that an agreement between parties to arbitrate any future disputes that may arise was void, notwithstanding the conflicting provisions of the Arbitration Act, because of the antiwaiver provision in section 14 of the 1933 Act, 15 United States Code Annotated section 77n. The *Wilko* court reasoned that an arbitration agreement required a securities purchaser to waive compliance with section 22, 15 United States Code Annotated section 77v, which provides for enforcement of the 1933 Act in the state or federal courts. Since Congress intended to grant special protections to buyers of securities covered by the 1933 Act, and since the protections are less effective in arbitration as opposed to judicial proceedings, the court held that the protective provisions of the 1933 Act required judicial direction to assure their effectiveness. (*Wilko, supra,* 346 U.S. at p. 437 [98 L.Ed. at pp. 176-177].)

Over 30 years later, however, the court determined that the situation had changed. In *McMahon,* the Supreme Court noted that "most of the reasons given in Wilko [were] rejected subsequently . . . as a basis for holding claims to be nonarbitrable." (*McMahon, supra,* 482 U.S. at p. 232 [96 L.Ed.2d at p. 197].) "Even if Wilko's assumptions regarding arbitration

---

[3] Appellants concede that the 1933 Act claims of respondents Beatrice Elliott, Richard Frazer, Roy Hubbard, Abdallah Moussa, and Robert Parsons may not be compelled to arbitration. Their agreements contained language excepting these claims. (See *ante,* fn. 1, and *Van Ness Townhouses* v. *Mar Industries Corp.* (9th Cir. 1988) 862 F.2d 754, 756-757.)

were valid at the time Wilko was decided, most certainly they do not hold true today for arbitration procedures subject to the SEC's oversight authority." (*Id.* at p. 233 [96 L.Ed.2d at p. 198.)

*McMahon* pointed out that courts have considered arbitration a proper forum for 1934 Act claims where both parties were members of a securities exchange or the National Association of Securities Dealers (suggesting that arbitral tribunals are fully capable of handling such matters); that courts have sent 1934 Act claims based on international agreements for arbitration; and have concluded that *Wilko* does not apply to the submission to arbitration of existing disputes. (*McMahon, supra,* 482 U.S. at pp. 231-233 [96 L.Ed.2d at pp. 197-198].)

■ "As the Supreme Court has recognized, the Securities and Exchange Commission has virtually plenary authority over the arbitration procedures adopted by the national securities exchanges and securities associations. [Citation.] This authority includes the power to 'abrogate, add to, and delete from' the arbitration rules adopted by such bodies if necessary or appropriate to protect the rights created by the Securities Acts. [Citations.] . . . Because Congress has committed to the SEC the task of ensuring that the federal rights established by the Securities Acts are not compromised by inadequate arbitration procedures, we are bound by the Commission's determination that the procedures at issue here are satisfactory. [Citation.] Any contrary holding would frustrate this carefully crafted federal regulatory scheme." (*Cohen* v. *Wedbush, Noble, Cooke, Inc.* (9th Cir. 1988) 841 F.2d 282, 286.)

### DISCUSSION

■ We hold that the arbitration agreements must be enforced for the 1933 Act claim.

The lower federal courts have addressed the question of whether *Wilko,* in post-*McMahon* days, still bars enforcement of predispute arbitration agreements for claims arising under the 1933 Act. The decisions are in sharp conflict. The courts that find "that *McMahon* so seriously undermined *Wilko*'s rationale that [appellant's] 1933 Act claims, like his other claims, must be sent to arbitration,"[4] are matched by courts that declare: "as long as *Wilko* stands in the Supreme Court, agreements to arbitrate claims under the Securities Act of 1933 will remain unenforceable. . . ."[5]

---

[4](*Staiman* v. *Merrill Lynch, Pierce, Fenner & Smith* (C.D.Cal. 1987) 673 F.Supp. 1009, 1011; and see *Reed* v. *Bear, Stearns & Co., Inc.* (D.Kan. 1988) 698 F.Supp. 835, 840, for a list of post-*McMahon* cases discussing *Wilko*.)

[5](*Osterneck* v. *Merrill Lynch, Pierce, Fenner & Smith* (3d Cir. 1988) 841 F.2d 508, 512; *Sacco* v. *Prudential-Bache Securities, Inc.* (E.D.Pa. 1988) 703 F.Supp. 362, and see discussion therein.)

■ "Decisions of the United States Supreme Court are binding not only on all of the lower federal courts [citation], but also on state courts when a federal question is involved . . . ." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 779, p. 750.) ■ "[T]he decisions of the lower federal courts, although entitled to great weight, are not binding on state courts. '[T]he decisions of the lower federal courts on federal questions are merely persuasive. . . . Where lower federal court precedents are divided or lacking, state courts must necessarily make an independent determination of federal law.' [Citations.]" (*Id.* at § 780, p. 751.) Where the federal circuits are in conflict, the authority of the Ninth Circuit (which decides appeals from federal courts in California) is entitled to no greater weight than decisions from other circuits. (*Ibid.*; *Debtor Reorganizers, Inc.* v. *State Bd. of Equalization* (1976) 58 Cal.App.3d 691, 696 [130 Cal.Rptr. 64].) "[W]here there is more than one appellate court decision, and such appellate decisions are in conflict . . . the court exercising inferior jurisdiction can and must make a choice between the conflicting decisions." (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 456 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ "[Federal] [d]istrict courts are not always required to adhere slavishly to Supreme Court precedents that have not been explicitly overruled. [¶] Doctrinal developments need not take the form of an outright reversal of the earlier case. The Supreme Court may indicate its willingness to reverse or reconsider a prior opinion with such clarity that a lower court may properly refuse to follow what appears to be binding precedent. [Citations.] . . . [L]ower federal courts 'may properly decline to follow a U.S. Supreme Court decision when convinced that the Court would overrule the decision if it had the opportunity to do so.' [Citation.]" (*Araim* v. *Painewebber, Inc.* (N.D.Ga. 1988) 691 F.Supp. 1415, 1417-1418.)

Although the *Araim* court was not convinced that the court would overrule *Wilko* if given the opportunity, other courts were. "[T]he court in *McMahon,* while not expressly overruling *Wilko* v. *Swan,* did find the rationale behind the *Wilko* holding to be somewhat outdated. [Citation.] Indeed, the court stated that it believed *Wilko* would have been determined differently had the arbitration process in 1953 provided an adequate substitute for adjudication. [Citation.] Justice Blackmun went even further in his concurrence stating 'the Court effectively overrules *Wilko* by accepting the Securities and Exchange Commission's position that arbitration procedures in the securities industry and the Commission's oversight of the self-regulatory organizations (SROS) have improved greatly since Wilko was decided.' [Citation.]" (*Ryan* v. *Liss, Tenner & Goldberg Securities Corp.* (D.N.J. 1988) 683 F.Supp. 480, 484.) And, "In *Peterson* v. *Shearson/American Express, Inc.,* 849 F.2d 464 (10th Cir. 1988), the court stated that '[i]n *McMahon,* the Supreme Court essentially overruled *Wilko.*' [Citation.]"

(*Reed, supra,* 698 F.Supp. at p. 842.) "*McMahon* undercuts every aspect of *Wilko* v. *Swan* . . . ; a formal overruling of *Wilko* appears inevitable—or, perhaps, superfluous." (*Noble* v. *Drexel, Burnham, Lambert, Inc.* (5th Cir. 1987) 823 F.2d 849, 850, fn. 3.)

■■■■■ While the intentions of the Supreme Court toward *Wilko* are ambiguous ("[w]hile stare decisis concerns may counsel against upsetting Wilko's contrary conclusion under the Securities Act . . ." [*McMahon, supra,* 482 U.S. at p. 234 (96 L.Ed.2d at p. 199)]), the court, having granted certiorari in *Rodriguez De Quijas* v. *Shearson/American Express, Inc.* on November 14, 1988 (488 U.S. 954 [102 L.Ed.2d 379, 109 S.Ct. 389]), presumably will soon decide.[6] In *Rodriguez De Quijas,* the circuit court had observed, "The *McMahon* majority opinion does not expressly overrule *Wilko*; the precise issue of the arbitrability of [1933 Act] claims was not before the court. Nevertheless, the reasoning in *McMahon* completely undermined *Wilko* . . . ." (*Rodriguez De Quijas* v. *Shearson/Lehman Bros., Inc.* (5th Cir. 1988) 845 F.2d 1296, 1298, fn. omitted.)

■■ In the instant case, being concerned with a federal question, we are bound by federal law. ■■ The Federal Arbitration Act, 9 United States Code Annotated sections 1-14 (1982) "creates 'a body of federal substantive law of arbitrability,' enforceable in both state and federal courts and preempting any state laws or policies to the contrary. [Citations.]" (*Cohen* v. *Wedbush, Noble, Cooke, Inc., supra,* 841 F.2d at p. 285; see also *Heily* v. *Superior Court* (1988) 202 Cal.App.3d 255, 258-260 [248 Cal.Rptr. 673], cert. den. *sub nom. Heily* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1989) 489 U.S. __ [103 L.Ed.2d 186, 109 S.Ct. 1123].)

In addition, when we turn to public policy considerations, both federal and state policy favor arbitration. ■■ "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." (*Moses H. Cone Hospital, supra,* 460 U.S. at pp. 24-25 [74 L.Ed.2d at p. 785]; see also *Leicht* v. *Bateman Eichler, Hill Richards, Inc.* (9th Cir. 1988) 848 F.2d 130.) And, "[t]here is a strong public policy in this state favoring arbitration as a means of resolving disputes . . . ." (*Beynon* v. *Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 704 [161 Cal.Rptr. 146].)

---

[6] "A federal judgment is as final in California courts as it would be in federal courts . . . ." (*Calhoun* v. *Franchise Tax Bd.* (1978) 20 Cal.3d 881, 887 [143 Cal.Rptr. 692, 574 P.2d 763], cert. den. 439 U.S. 872 [58 L.Ed.2d 185, 99 S.Ct. 205], rehg. den. 439 U.S. 960 [58 L.Ed.2d 353, 99 S.Ct. 365].) "The federal rule is that a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition. (*Stoll* v. *Gottlieb* (1938) 305 U.S. 165, 170-171 [83 L.Ed. 104, 59 S.Ct. 134] . . . ; *Martin* v. *Martin* (1970) 2 Cal.3d 752, 761 . . . .)" (*Levy* v. *Cohen* (1977) 19 Cal.3d 165, 172 [137 Cal.Rptr. 162, 561 P.2d 252], cert. den. 434 U.S. 833 [54 L.Ed.2d 94, 98 S.Ct. 119].)

This is now even codified in California for all civil cases with a dispute value of under $50,000. (Code Civ. Proc., § 1141.11.)

Judicial approval of arbitration as a dispute-resolving mechanism is clear. Under the reasoning of *McMahon,* we do not find "arbitration is inadequate to protect the substantive rights at issue." (*McMahon, supra,* 482 U.S. at p. 229 [96 L.Ed.2d at p. 195].) Furthermore, California courts have enforced arbitration agreements involving both customers and employees of stock brokerages. (*Thomas* v. *Perry* (1988) 200 Cal.App.3d 510 [246 Cal.Rptr. 156], following a United States Supreme Court decision compelling that result in *Perry* v. *Thomas* (1987) 482 U.S. 483 [96 L.Ed.2d 426, 107 S.Ct. 2520], and citing *McMahon* with approval; *Heily, supra,* 202 Cal.App.3d 255; and *Downs* v. *Prudential-Bache Securities, Inc.* (1988) 202 Cal.App.3d 616 [248 Cal.Rptr. 734]; see also *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 822 [171 Cal.Rptr. 604, 623 P.2d 165] [for "a substantial number of California cases involving the compulsion of unwilling contractual parties (both employees and customers) to arbitrate disputes with members of the New York Stock Exchange before the latter body."].)

Arbitration is appropriate for claims under the 1933 Act. "Although *McMahon* did not involve a 1933 Act claim, and the Court did not expressly overturn *Wilko,* it appears to this court that *McMahon* so seriously undermined *Wilko*'s rationale that [appellant's] 1933 Act claims, like his other claims, must be sent to arbitration." (*Staiman, supra,* 673 F.Supp. at p. 1011.) "First, the antiwaiver provision in the 1933 Act [is] nearly identical to the antiwaiver provision in the 1934 Act. [Citation.] Prior to *McMahon,* the Ninth Circuit as well as several other circuits had relied on this similarity to hold that arbitration of 1934 Act claims should be barred. [Citation.] Now that the *McMahon* Court has held that parties agreeing to arbitration do not waive a substantive provision of the 1934 Act when they forego the right to a judicial forum, [citation], the nearly identical antiwaiver provision in the 1933 Act should be similarly construed.

"Second, the *McMahon* Court severely restricted the holding of *Wilko* as 'barring waiver of a judicial forum only where arbitration is inadequate to protect the substantive rights at issue.' [Citation.] Staiman has made no showing whatsoever that his 1933 Act claims . . . would be inadequately protected in arbitration. This court reads *McMahon* as requiring such a showing.

"Third, the *McMahon* Court noted the expanded oversight authority exercised by the Securities and Exchange Commission over the national securities exchanges and held that it can no longer be assumed that a complainant's rights could not be vindicated through arbitration. . . .

*McMahon* held that an arbitration held pursuant to the identical NYSE procedures did not effect a waiver of the 1934 Act. [Citation.] A similar conclusion is compelled for claims under the 1933 Act." (*Staiman, supra,* 673 F.Supp. at p. 1011.)

We accept *McMahon* as authority to enforce arbitration of 1933 Act claims. Both state and federal public policy support arbitration. Numerous decisions of the Supreme Court as well as of lower federal courts have compelled arbitration in securities disputes. (See, in general, *McMahon, supra,* 482 U.S. at pp. 232-233 [96 L.Ed.2d at p. 198].) The basis for the decision in *Wilko,* a view of arbitration based upon different times and different circumstances, has passed. There is no rationale in the purpose, history, or language of either act to justify holding 1933 Act claims nonarbitrable and 1934 Act claims arbitrable. We decline to so hold.

Respondents also contend that the previous denial of appellants' motion was res judicata on the issue, and that the court should not have allowed appellants to reopen the motion.

Appellants' original motion to compel arbitration specifically excluded the 1933 Act claims from its prayer. Although a minute order purported to deny arbitration of the 1933 Act claims, the formal order of the court more accurately "excepted" them from its order granting arbitration. Appellants made their first motion on the 1933 Act claims after the *McMahon* decision. Since this issue was not briefed or argued before, the motion was properly made and res judicata is not an issue.

The judgment is reversed. Each party to bear their own costs on appeal.

Agliano, P. J., and Brauer, J., concurred.