[No. E029765. Fourth Dist., Div. Two. Oct. 22, 2001.]

NATTIE THUNDERBURK, Plaintiff and Appellant, v.
UNITED FOOD & COMMERCIAL WORKERS' UNION, LOCAL 324,
Defendant and Respondent.

## COUNSEL

Barnes, Crosby, Fitzgerald & Zeman and William M. Crosby for Plaintiff and Appellant.

Gilbert & Sackman, Robert A. Cantore and Joseph L. Paller, Jr., for Defendant and Respondent

## OPINION

GAUT, J.—Plaintiff Nattie Thunderburk appeals summary judgment entered against her and in favor of defendant United Food & Commercial Workers' Union, Local 324 (Local 324). Plaintiff was formerly employed by Local 324 as a secretary. After Local 324 terminated her employment, she sued Local 324 for wrongful termination. Local 324 filed a motion for summary judgment, which the trial court granted on the ground plaintiff's contract-based wrongful termination claims were preempted by the federal Labor-Management Reporting and Disclosure Act of 1959[1] (LMRDA).

The trial court also denied plaintiff's motion to amend her complaint to add a cause of action alleging wrongful termination in violation of public policy. The court determined that the proposed cause of action was also preempted by the LMRDA.

Plaintiff contends her contract-based wrongful termination causes of action are not preempted by the LMRDA because she was not a policymaking or confidential employee. She further contends her proposed tortious wrongful termination claim was not subject to preemption because it was not a "contract claim in other garb" but, rather, was based on a completely different theory based on violations of her First Amendment rights.

We are confronted here with determining the extent of the union's freedom to discharge its employees, despite limitations normally imposed on employers by California wrongful termination law. We must reject plaintiff's contentions because we are constrained by federal law which provides

[1]Title 29 United States Code sections 401-531.

Local 324, under the circumstances of this case, with the unfettered right to terminate confidential employees such as plaintiff.

### 1. *Facts and Procedural Background*

In January 1993, Local 324's predecessor, Local 551, hired plaintiff as an executive assistant and office manager. As a condition of her employment, she became a union member.

In January 1994, Local 551 merged with Local 324. Plaintiff then became an employee of the surviving entity, Local 324. Her position and duties changed. Her new position was entitled "executive secretary," and her job responsibilities consisted of participating in a secretary pool in which the secretaries primarily provided secretarial services to Local 324 business agents. Union business agents take care of the union's day-to-day business and are responsible primarily for ensuring that collective bargaining agreements are complied with and processing individual members' grievances.

In the spring of 1998, Local 324, along with other unions throughout California, began campaigning to defeat Proposition 226, which was placed on the June 1998 ballot. Proposition 226 prohibited unions from spending union dues money for political purposes unless each member provided written consent to do so. Local 324's campaign efforts were directed toward its members, as well as the general public.

Contrary to Local 324's position on Proposition 226, plaintiff favored Proposition 226 and made her views known at work to fellow employees and several of Local 324's business agents. She also expressed her views outside the work environment.

Shortly thereafter, she was excluded from meetings at work, began receiving unwarranted criticism, and in May 1998 was required to begin punching a time clock.

On June 22, 1998, two weeks after the voters rejected Proposition 226, Local 324 terminated plaintiff. She was told she was terminated for typing a personal memorandum during company time, which constituted theft of company time and misuse of company property.

The president of Local 324, John C. Sperry, stated in his declaration supporting Local 324's motion for summary judgment that plaintiff was terminated because she was disrupting good employer/employee relations and it was therefore in the best interests of the union to terminate her. To

avoid a material dispute of fact, Local 324 assumed for purposes of its summary judgment motion that plaintiff's support of Proposition 226 was a substantial motivating factor in terminating plaintiff.

On August 4, 1998, plaintiff filed a wrongful termination complaint against Local 324, alleging (1) breach of an implied contract, (2) breach of an implied covenant of good faith and fair dealing, and (3) tortious discharge based on a public policy. Local 324's answer to the complaint asserted, among other things, that plaintiff's claims were preempted by federal law.

Plaintiff voluntarily dismissed, without prejudice, her third cause of action for tortious discharge based on public policy. Local 324 filed a motion for summary judgment on the ground the first and second causes of action were preempted by the LMRDA. Plaintiff opposed the motion, arguing that she was not a confidential union employee subject to LMRDA preemption.

While Local 324's motion for summary judgment was pending, plaintiff filed a motion to amend her complaint to reallege her previously dismissed third cause of action for wrongful termination in violation of public policy.

Following oral argument on both the summary judgment motion and motion to amend, the trial court granted summary judgment on the ground the two contract-based causes of action were preempted by the LMRDA because it was undisputed that plaintiff was a confidential employee. The court further denied plaintiff's motion to amend on the ground her proposed third cause of action was preempted as well.

## 2. *Summary Judgment Standard of Review*

" 'Summary judgment is proper only where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citation.] "To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citations]." [Citation.] "All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. [Citation.]" [Citation.] We review the record de novo to determine whether defendants met their burdens of proof. [Citation.]' [Citation.]"[2]

In the instant case, the trial court granted summary judgment on the ground plaintiff's contract-based wrongful termination causes of action were preempted by the LMRDA.

---

[2]*Artiglio v. General Electric Co.* (1998) 61 Cal.App.4th 830, 835 [71 Cal.Rptr.2d 817].

### 3. *Preemption*

A state action is preempted when it is an obstacle to the accomplishment and execution of the purposes and objectives of Congress.[3] Preemption of state law may arise when Congress provides for federal protection of conduct that state law attempts to regulate or penalize.[4] This is known as substantive preemption and, in such cases, state action is preempted and may be stricken by direct operation of the supremacy clause of the United States Constitution.[5] For instance, "State law is unquestionably preempted where a valid 'act of Congress fairly interpreted is in actual conflict with the law of the State.' "[6]

The instant case raises the issue of whether plaintiff's state law wrongful termination claims are preempted by federal law regulating unions, i.e., the LMRDA. This court must determine whether there is a conflict between plaintiff's state law wrongful termination causes of action and federal labor policy embodied in the LMRDA.[7]

In *Screen Extras Guild, Inc. v. Superior Court*,[8] the court considered the similar issue of whether a union business agent's contract-based wrongful termination claim was preempted by the LMRDA. Our high court explained in *Screen* that the LMRDA "mandates that labor unions be democratically governed. Democratic union governance dictates that elected union officials be responsive to the will of their union membership-electorate. To effectuate this policy, elected union officials have the authority to discharge union employees in management or policymaking positions who do not, in their opinion, serve the union membership properly. Permitting former union employees who held management or policymaking positions to bring state actions against the unions which employed them, or against the officials of such unions, premised on their discharge, would undermine the ability of elected union leaders to effectuate the will and policies of the union membership they represent. Thus, the strong federal policy favoring union democracy, embodied in the LMRDA, preempts state causes of action for wrongful discharge or related torts when brought against a union-employer by its former management or policymaking employee."

In *Screen* the court held that the union business agent's wrongful termination cause of action for breach of the good faith covenant was preempted

---

[3]*Screen Extras Guild, Inc. v. Superior Court* (1990) 51 Cal.3d 1017, 1022 [275 Cal.Rptr. 395, 800 P.2d 873].

[4]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1020.

[5]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1023.

[6]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1023.

[7]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1023.

[8]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at pages 1020-1021.

by the LMRDA because the union had unfettered discretion to terminate management and policymaking employees. It was undisputed in *Screen* that the plaintiff was considered a management employee.[9]

Here, Local 324 concedes plaintiff was not a management or policymaking employee. Local 324 argues that, nevertheless, plaintiff's claims are preempted because it is undisputed that she was a confidential employee, and under *Screen*, wrongful termination claims by confidential union employees are also preempted by the LMRDA, even if the employee is not a policymaking or management employee. Local 324 relies in part on the following language in *Screen* for this proposition: "[W]e conclude that the LMRDA preempts Smith's action for wrongful discharge against SEG. In our view, to allow such actions to be brought by former *confidential or policymaking* employees of labor unions would be inconsistent with the objectives of the LMRDA and with the strong federal policy favoring union democracy that it embodies."[10]

There is also other language in *Screen* indicating that "confidential" employees' wrongful termination claims are subject to LMRDA preemption because, as with policymaking and management employees, their access to sensitive, confidential information enables them to thwart implementation of union policies and programs advanced by elected union officials and thus frustrate the ability of elected officials to carry out the mandate of the union members.[11]

The United States Supreme Court in *Finnegan v. Leu*[12] also indicated the union had an unlimited right to terminate confidential employees. In *Finnegan* the court held that under the LMRDA union officials had unlimited rights to terminate management and policymaking employees, such as union business agents, and added in a footnote that the court left open "the question whether a different result might obtain in a case involving nonpolicymaking and nonconfidential employees."[13] It could thus be inferred from such language that, as with policymaking employees, confidential employees are also subject to termination without limitation by elected union officials because they also potentially can thwart implementation of the union's policies and objectives.

In *Screen*, the court noted that "*Tyra v. Kearney* [(1984)] 153 Cal.App.3d 921 [200 Cal.Rptr. 716], and *Finnegan v. Leu, supra,* 456 U.S. 431 . . . ,

---

[9]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1021.

[10]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1024, italics added.

[11]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at pages 1028, 1029.

[12]*Finnegan v. Leu* (1982) 456 U.S. 431 [102 S.Ct. 1867, 72 L.Ed.2d 239].

[13]*Finnegan v. Leu, supra,* 456 U.S. at page 441, footnote 11 [102 S.Ct. at page 1873].

are both based on the realization that policymaking and *confidential staff* are in a position to thwart the implementation of policies and programs advanced by elected union officials and thus frustrate the ability of the elected officials to carry out the mandate of their election. (See *Sheet Metal Workers v. Lynn* (1989) 488 U.S. 347, 354 [102 L.Ed.2d 700, 709, 109 S.Ct. 639] [explaining *Finnegan*].)"[14] Consequently, the wide scope of federal regulation of labor unions under the LMRDA and the supremacy clause preempts wrongful discharge claims brought against labor unions or their officials by former policymaking or confidential employees.[15]

We must next consider what is considered a "confidential" position within the meaning of LMRDA. In *Hodge v. Drivers, Salesmen, etc., Local Union 695*,[16] which is very similar factually to the instant case, a former union secretary sued the union for reinstatement and backpay. She claimed her termination violated the LMRDA. The court in *Hodge* held that, since the plaintiff had wide-ranging responsibility and access to confidential union information, she was a confidential employee under the LMRDA and therefore union officials had unrestricted freedom to terminate her.[17] Although *Hodge* is not binding on this court because it is a federal appellate case, it is entitled to substantial deference as a well-reasoned federal decision on an issue of federal law.[18]

Plaintiff argues that *Finnegan* and *Hodge* are distinguishable because they do not address the issue of LMRDA preemption. These cases nevertheless are instructive in determining whether union termination of certain union employees is unrestricted. In *Finnegan* and *Hodge*, as in the instant case, the court was concerned with upholding the LMRDA's overriding objective of ensuring that unions would be democratically governed and responsive to the will of the union membership. In furtherance of such objective, union officials were given unlimited discretion to hire and fire union employees who were responsible for, or could thwart, implementation of the union's activities and policies even though countervailing federal legislation prohibited terminating employees based on their political views and activities.

Here, the court's determinations and analysis in *Finnegan* and *Hodge* are relevant to this court's determination as to whether plaintiff was the type of

---

[14]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1029, italics added; see also *Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1026, quoting *Bloom v. General Truck Drivers* (9th Cir. 1986) 783 F.2d 1356, 1361-1362.

[15]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at pages 1030, 1033.

[16]*Hodge v. Drivers, Salesmen, etc., Local Union 695* (7th Cir. 1983) 707 F.2d 961.

[17]*Hodge v. Drivers, Salesmen, etc., Local Union 695, supra,* 707 F.2d at page 965.

[18]*Yee v. City of Escondido* (1990) 224 Cal.App.3d 1349, 1351 [274 Cal.Rptr. 551]; *Elliot v. Albright* (1989) 209 Cal.App.3d 1028, 1034 [257 Cal.Rptr. 762].

employee whom union officials had an unrestricted right to terminate under the LMRDA.

The court in *Hodge* noted that the proper application of the word "non-confidential" was the "fulcrum" in *Hodge*.[19] The plaintiff in *Hodge* argued that the trial court erred in finding that she was a confidential union employee subject to unrestricted termination by the union. She claimed her job duties were routine in nature, unlike the sensitive duties of business agents and other policymakers. The *Hodge* court disagreed, stating: "But we think this distinction goes more to the non-'policymaking' half of the Supreme Court's *Finnegan* reservation, not its independent and conjunctive 'nonconfidential' employee requirement."[20] The court concluded that the plaintiff secretary was a confidential employee based on the following undisputed facts: "[A]s part of her routine duties plaintiff had wide-ranging visual and telephone access to sensitive material concerning vital union matters such as internal union complaints, strike and organizing status and strategy, lists and locations of union activists and stewards, unfair labor practices charges, collective bargaining agreement proposals, and the affairs and performance of the union's business agents—all information whose nondisclosure plaintiff acknowledged was crucial . . . ."[21]

The *Hodge* court further noted that "Nothing suggests to us that her position was less 'confidential' because it carried the unadorned title of 'secretary;' indeed, *Finnegan* by its very terms is not limited to powerful decisionmakers but includes 'administrators' and 'staff.' "[22] The court concluded that "where, as here, the plaintiff has such wide access to confidential and sensitive union information, the district court properly found that plaintiff did not qualify for the 'nonconfidential' employee reservation left open in *Finnegan*."[23]

In the instant case we must determine whether plaintiff's employment falls within the preemption class of "confidential employee" within the meaning of LMRDA. At the time of plaintiff's termination, she was employed by Local 324 as one of several secretaries who were holding positions entitled "executive secretary." Plaintiff and the other executive secretaries, as a group, assisted several union representatives. According to plaintiff's deposition testimony, her job duties included providing Spanish-English translation services for Local 324 representatives and attorneys in

[19]*Hodge v. Drivers, Salesmen, etc., Local Union 695, supra,* 707 F.2d at page 963.
[20]*Hodge v. Drivers, Salesmen, etc., Local Union 695, supra,* 707 F.2d at page 964.
[21]*Hodge v. Drivers, Salesmen, etc., Local Union 695, supra,* 707 F.2d at page 964.
[22]*Hodge v. Drivers, Salesmen, etc., Local Union 695, supra,* 707 F.2d at page 964.
[23]*Hodge v. Drivers, Salesmen, etc., Local Union 695, supra,* 707 F.2d at page 965.

connection with legal proceedings, opening and maintaining grievance files, processing arbitration claims for union representatives, transmitting legal files and documents from Local 324 to the union's attorneys, opening and processing the union representatives' daily mail, monitoring files of disciplinary actions taken against Local 324 members, processing member applications for union academic scholarships, and processing applications for death benefits paid by the union to deceased members' families.

As a result of these duties, plaintiff had access to confidential information, such as the union's communications with its attorneys; union representatives' mail; members' disciplinary notices; grievance files; names and addresses of union officers and executive board members; scholarship files which contained students' grade point averages and school transcripts; death benefit files which contained information regarding the cause of death and autopsy results; union membership records containing members' names, Social Security numbers, home addresses, work location, compensation, and dues payment records; and information regarding Local 324's political propaganda.

In plaintiff's declaration opposing summary judgment, she described her job responsibilities as follows: "My assignment was to perform routine word processing and data entry tasks as directed by a number of the Local's business agents. I answered the telephone for these representatives, transferring calls to them when they were in the office, and taking messages and giving out basic information for them when they were away. While there were certain business agents to whom I was 'assigned,' I was tasked with covering for any and all of the other secretaries in the pool when they were not available for any reason. I worked in a cubicle area, and, like the other low-level secretaries, I was expected to do my own work, to stay basically aware of the efforts of the others, and to assist when another secretary was overwhelmed by the task at hand." She also stated that she performed translating services and processed mail, grievances and scholarship applications but had no discretionary authority regarding these matters. The files she accessed were stored in unlocked cabinets and were available to anyone in the office.

Plaintiff further stated in her declaration that she did not have any policymaking authority, did not perform supervisory tasks or accounting functions, and did not have any duties concerning union contract proposals or negotiations. She also did not have authority to settle employee claims or grievances, assign arbitrators or hearing officers, determine or provide input into legal opinions regarding union disciplinary actions or grievance procedures, determine recipients of scholarships, or determine recipients of death

benefits. She also claimed she did not have access to union employee personnel files nor access or input into sensitive material concerning vital union matters, such as strike or organizing status and strategy, unfair labor practices and charges, collective bargaining proposals or union directives governing affairs and performance by union officials. As to her access to material such as political propaganda and membership lists, she stated that these were distributed to all union members, staff, officers and employees. As to her attendance at membership meetings, all union employees and members were invited to these meetings.

In a written warning notice, reprimanding plaintiff for making various comments to coworkers, her supervisor reminded her that her job "is that of a secretary to business representatives. Although the tasks of secretaries varies [*sic*] from business to business; department to department and even day to day; the actual definition does not and that is: [¶] 'One employed to handle correspondence and manage routine and detail work for a superior.' [¶] It is not your job to question, second guess or interfer [*sic*] with how a business representative is handling any portion of their job."

While in the instant case plaintiff did not have policymaking or management responsibilities and many of plaintiff's job responsibilities were of a clerical, nonconfidential nature, it is undisputed that she nevertheless had access to confidential union information, which if disclosed, could have thwarted union policies and objectives. It was for this reason the courts in *Finnegan* and *Hodge* concluded that the union was unrestricted in terminating the plaintiff union employees.[24] Accordingly, we conclude plaintiff was a confidential employee within the meaning of the LMRDA and her wrongful termination claims are preempted.

### 4. *Denial of Leave to Amend Complaint*

Plaintiff contends the trial court abused its discretion in denying her motion to amend her complaint pursuant to Code of Civil Procedure section 473. Plaintiff attempted to reinstate her third cause of action which she had previously dismissed without prejudice. Plaintiff asserted in the proposed cause of action that Local 324 "tortiously discharged plaintiff in violation of a fundamental and substantial public policy of the State of California in that a substantial motivating factor in the decision to terminate plaintiff was plaintiff's having protested what plaintiff reasonably believed to be violations of her Constitutional rights to free speech, assembly and to contribute

---

[24]*Hodge v. Drivers, Salesmen, etc., Local Union 695, supra,* 707 F.2d at page 963; *Finnegan v. Leu, supra,* 456 U.S. at page 441 [102 S.Ct. at page 1873].

to political causes and candidates of her choice." This included voicing her opinions regarding Proposition 226 that were contrary to the union's views. The public policy forming the basis of plaintiff's proposed cause of action is codified in California Labor Code sections 1101 and 1102 which prohibit discharge of employees for refusing to follow "any particular course or line of political action or political activity."[25]

The trial court ruled that, as with plaintiff's contract-based claims for wrongful termination, the proposed third cause of action was preempted by the LMRDA under *Screen*.

In *Screen* the plaintiff asserted a cause of action for wrongful discharge in breach of an employment contract, defamation, and negligent and intentional infliction of emotional distress. After concluding the wrongful discharge claim was preempted, the *Screen* court concluded that the remaining causes of action were also preempted because they were simply the "wrongful termination claim in other garb. The facts Smith alleged to underlie these causes of action are essentially the same as those which underlie her action for wrongful discharge (i.e., the fact and circumstances of her discharge). Smith alleges no significant additional tortious activity . . . ."[26]

But the *Screen* court added in a footnote that the remaining causes of action are not necessarily, in all instances, automatically preempted along with wrongful discharge claims.[27] The *Screen* court stated that "We look to the substance of the claim, not its characterization, to determine whether an action is preempted by federal labor law. [Citations.] Because Smith's claimed damages for infliction of emotional distress and from defamation all flow from her allegedly wrongful dismissal, these causes of action are barred by the LMRDA for the same reasons that her cause of action for wrongful discharge is barred."[28]

The *Screen* court acknowledged that "our holding has the inevitable consequence of denying to Smith, and to other potential plaintiffs in similar circumstances, a remedy which is otherwise available to some classes of employees in this state. However, in enacting the LMRDA, 'Congress simply was not concerned with perpetuating appointed union employees in office at the expense of an elected president's freedom to choose his own staff.' [Citation.] We are thus compelled to recognize that 'the wide scope of

---

[25]Labor Code section 1102.
[26]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1032.
[27]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1032, footnote 12.
[28]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at page 1032.

federal regulation of labor unions' " does not allow application of California wrongful discharge law to union employees.[29]

In the instant case, plaintiff's proposed cause of action for tortious wrongful termination was based on the same alleged wrongful conduct that formed the basis of her contract-based causes of action. In the general charging allegations section of her original complaint, she alleged she openly opposed Local 324's position and campaign regarding Proposition 226. Thereafter she was subjected to a hostile work environment and terminated based on false and pretextual reasons. The first and second causes of action incorporated these allegations and further alleged she was terminated without cause in breach of her implied employment contract to terminate with cause and in breach of an implied covenant of good faith and fair dealing.

The facts which form the basis of plaintiff's proposed third cause of action for tortious wrongful termination are essentially the same as her contract-based causes of action. She alleges no significant additional tortious activity apart from that which constitutes the basis of preemption of the first and second causes of action.

Even assuming plaintiff's proposed cause of action asserted grounds based on a different theory and facts to warrant considering it independently, it nevertheless is preempted by the LMRDA. A conflict exists between the public policy set forth in the state legislation,[30] which forms the basis of plaintiff's proposed cause of action, and the right of union officials under the LMRDA to freely " 'choose a staff whose views are compatible with his own' . . . 'to select his own administrators' as a way of 'ensuring a union administration's responsiveness to the mandate of the union election.' "[31]

In *Finnegan* the United States Supreme Court rejected the plaintiff union business agents' contention that they were wrongfully terminated in violation of their First Amendment rights to freedom of speech. The union terminated them following an election of the union president whom they had not supported. The *Finnegan* court held that the union business agents could not successfully assert that their discharge violated the LMRDA's guarantees of free speech because union officials have a paramount interest in selecting

---

[29]*Screen Extras Guild, Inc. v. Superior Court, supra,* 51 Cal.3d at pages 1032-1033; see also *Tyra v. Kearney, supra,* 153 Cal.App.3d 921, 927 (conc. opn. of Crosby, J.).

[30]Labor Code sections 1101 and 1102.

[31]*Hodge v. Drivers, Salesmen, etc., Local Union 695, supra,* 707 F.2d at page 964, quoting *Finnegan v. Leu, supra,* 456 U.S. at page 441 [102 S.Ct. at page 1873].

and retaining employees who are trusted to work efficiently and diligently in carrying out the union's policies.[32]

Likewise, in *Hodge* the plaintiff, a union secretary, asserted that her First Amendment rights under the United States Constitution were violated by the union's terminating her based on her political views concerning union activities. The *Hodge* court stated: "[T]he Supreme Court in *Finnegan* noted that the Labor Management Reporting and Disclosure Act was not intended to address the issue of patronage, [citation], and, indeed, labor unions, as centers of highly politicized 'countervailing power' rather than public bodies expected to act disinterestedly, would seem to be better left wide discretion in ensuring political solidarity in their administrative operations."[33]

Accordingly, the *Hodge* court concluded that, although the plaintiff was merely a union secretary, she was a confidential employee and thus the union was unrestricted in discharging her based on her union-related views, which were incompatible with union officials' views.[34]

We conclude here that Local 324 had an unrestricted right to discharge plaintiff despite California legislation prohibiting termination based on an employee's political activities. Plaintiff's proposed cause of action for wrongful termination in violation of state law prohibiting termination based on political activity is preempted by federal legislation providing the union with a paramount interest in choosing loyal staff that is motivated to work in furtherance of the union's causes and policies and will not thwart union objectives. The trial court thus did not abuse its discretion in denying plaintiff's motion for leave to amend.

## 5. *Disposition*

The judgment is affirmed. Local 324 is awarded its costs on appeal.

Ramirez, P. J., and Hollenhorst, J., concurred.

---

[32]*Finnegan v. Leu, supra,* 456 U.S. at page 442 [102 S.Ct. at pages 1873-1874].
[33]*Hodge v. Drivers, Salesmen, etc., Local Union 695, supra,* 707 F.2d at page 965.
[34]*Hodge v. Drivers, Salesmen, etc., Local Union 695, supra,* 707 F.2d at page 965.