114 Cal.Rptr.2d 551 (2001)
94 Cal.App.4th 709
R. BETANCOURT et al., Plaintiffs and Appellants,
v.
STORKE HOUSING INVESTORS et al., Defendants and Respondents.
No. B145835.
Court of Appeal, Second District, Division Six.
December 18, 2001.
Review Granted April 10, 2002.
*552 Gilbert & Sackman, Kenneth J. Sackman, Steven M. Rehaut and Laurie A. Traktman, Los Angeles, for Plaintiffs and Appellants.
Mullen & Henzell, Derek B. Lipscombe, Los Angeles, and Rafael Gonzalez, for Defendants and Respondents.
PERREN, J.
Plaintiff laborers, relying upon Civil Code[1] section 3110, filed a mechanics' lien against the property upon which they had performed construction work. They and their union claimed that not all of their wages have been paid and sued to foreclose on the lien. The defendant owners of the property demurred, asserting that because the amounts allegedly due the laborers are pension trust fund contributions for benefits, the matter is subject to federal preemption under ERISA.[2]
The trial court, relying on our Supreme Court's decision in Carpenters So. Cal. Admin. Corp. v. El Capitan Development Co. *553 (1991) 53 Cal.3d 1041, 282 Cal.Rptr. 277, 811 P.2d 296 (El Capitan), sustained the demurrer without leave to amend and dismissed the action, finding that the state claim is preempted by ERISA.
R. Betancourt, together with other employees (laborers) and District Council No. 16 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (Union), appeal from the judgment in favor of respondent property owners, Storke Housing Investors and BDC Storke Development (Storke).
Because decisions of the United States Supreme Court subsequent to El Capitan have dramatically narrowed the preemptive scope of ERISA, we hold that ERISA does not bar this action. We conclude that we are not bound by El Capitan. Accordingly, we reverse and direct the trial court to overrule the demurrer.

FACTS
Laborers are Union members who worked for R.P. Richards, a subcontractor of Trubucco & Associates, on a residential construction project owned by respondent Storke. Richards employed the laborers pursuant to a collective bargaining agreement (CBA) between Trubucco and Union. In accordance with the CBA, appellants were entitled to an hourly compensation package, including wages and benefits. Although the laborers received their cash wages, they were not paid the full value of their work because contributions to their benefit plans were not made.
The laborers recorded a mechanics' lien with the County of Santa Barbara in the amount of $33,236.56 against Storke's real property. The lien was for the unpaid contributions pursuant to section 3110. Section 3110 provides, in pertinent part, "... laborers ... performing labor ... contributing to a work of improvement shall have a lien upon the property upon which they have bestowed labor ... for the value of such labor done ... or furnished at the instance of the owner or of any person acting by his authority or under him as contractor or otherwise." The laborers and their Union filed the instant lawsuit to foreclose on the section 3110 lien. The laborers sued as individuals and as members of Union. The Union sued as a party to the CBA, and not as a trust fund.

DISCUSSION

Standard of Review
After a demurrer is sustained without leave to amend, we independently review the complaint to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (McCall v. PacifiCare of Cal., Inc. (2001) 25 Cal.4th 412, 415, 106 Cal.Rptr.2d 271, 21 P.3d 1189; Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 38-39, 77 Cal.Rptr.2d 709, 960 P.2d 513.) We give the complaint a reasonable interpretation, reading it as a whole and assuming the truth of the facts pled. (McCall, supra, at p. 415, 106 Cal.Rptr.2d 271, 21 P.3d 1189; Quelimane, supra, at p. 38, 77 Cal. Rptr.2d 709, 960 P.2d 513.)

Allegations of Complaint
The complaint alleges: 1) plaintiff Union members worked as laborers on the Storke property for an hourly compensation package pursuant to a CBA, 2) laborers and Union were parties to the CBA, 3) $33,236.56 is due plaintiffs for their unpaid labor on the project, and 4) plaintiffs recorded a mechanics' lien on the Storke property pursuant to section 3110. Plaintiffs pray for judgment that the mechanics' lien be foreclosed in the amount of $33,236.56.

*554 ERISA

ERISA states, in pertinent part, "... the provisions of this subchapter ... shall supersede any and all State laws insofar as they may ... relate to any employee benefit plan described in section 1003(a) of this title...." (29 U.S.C. § 1144(a).) "The term `employee benefit plan' ... means an employee welfare benefit plan ..." which is established by an employer engaged in commerce or by an employee organization representing employees so engaged. (Id. at §§ 1002(3), 1003(a).) Pursuant to ERISA, welfare benefit plans are maintained by employers or employee organizations to provide fringe benefits such as insurance, vacation and training programs to their participants. (Id. at § 1002(1).) ERISA imposes certain substantive requirements upon such benefit plans for participation, funding and vesting of benefits and procedural requirements for reporting, disclosure and other fiduciary responsibilities concerning these benefits. (Metropolitan Life Ins. Co. v. Massachusetts (1985) 471 U.S. 724, 735, 105 S.Ct. 2380, 85 L.Ed.2d 728; accord, New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co. (1995) 514 U.S. 645, 651, 115 S.Ct. 1671, 131 L.Ed.2d 695 (Travelers).)

ERISA Preemption
The trial court found that ERISA preempts this lawsuit, relying on El Capitan. In El Capitan, our Supreme Court discussed prior holdings of the United States Supreme Court which broadly construed the phrase "relate to" contained within 29 United States Code section 1144(a). (El Capitan, supra, 53 Cal.3d at pp. 1048-1049, 282 Cal.Rptr. 277, 811 P.2d 296.) El Capitan noted that on several occasions the United States Supreme Court concluded that `"state laws which make "reference to" ERISA plans are laws that "relate to" those plans within the meaning of [§ 1144(a) ] [of ERISA].' [Citations.]" (El Capitan, supra, at p. 1049, 282 Cal.Rptr. 277, 811 P.2d 296.) El Capitan explained that prior United States Supreme Court pronouncements made clear that state laws which refer to, have a connection with or are specifically designed to affect such benefit plans "relate to" and are preempted by ERISA. (Id. at pp. 1048-1049, 282 Cal.Rptr. 277, 811 P.2d 296.)
In El Capitan, the administrator and assignee of employee benefit trust funds sued to foreclose on a lien recorded to recover delinquent fringe benefit contributions to the trust funds. That lien was recorded pursuant to section 3111. (El Capitan, supra, 53 Cal.3d at pp. 1045-1046, 282 Cal.Rptr. 277, 811 P.2d 296.) Section 3111 states, in pertinent part, "[f]or the purposes of this chapter, an express trust fund to which a portion of a laborer's total compensation is to be paid pursuant to ... a collective bargaining agreement for the provision of benefits, ... shall be entitled to assert the same rights and claims as laborers performing labor upon ... a work of improvement, to the extent of the compensation agreed to be paid to that express trust fund for labor on that improvement only."
El Capitan found that section 3111 expressly refers to trust funds established pursuant to a CBA, and it is specifically designed to affect employee benefit plans. (El Capitan, supra, 53 Cal.3d at p. 1049, 282 Cal.Rptr. 277, 811 P.2d 296.) El Capitan pointed out that section 3111 treats such trust funds as persons furnishing labor, thereby singling them out for special treatment. (Ibid.) Furthermore, section 3111 permits trust funds to file a mechanics' lien against real property to recover fringe benefits, a remedy not available under ERISA. (Id. at pp. 1049, 1052, 282 *555 Cal.Rptr. 277, 811 P.2d 296.) The El Capitan court viewed this remedy as creating an alternative funding mechanism regulating ERISA benefit plans. (Id. at pp. 1051, 1052, 282 Cal.Rptr. 277, 811 P.2d 296.) Accordingly, our Supreme Court concluded that section 3111 "relates to" ERISA and is preempted by it. (Id. at pp. 1047, 1049, 282 Cal.Rptr. 277, 811 P.2d 296.)
The trial court believed that El Capitan "is still good law" and governs this case. We respectfully disagree. In the years following the decision in El Capitan, the United States Supreme Court has more narrowly construed the reach of ERISA. (Travelers, supra, 514 U.S. at p. 655, 115 S.Ct. 1671; California Div. of Labor Standards Enforcement v. Dillingham Const, N.A., Inc. (1997) 519 U.S. 316, 324-325, 117 S.Ct. 832, 136 L.Ed.2d 791 (Dillingham).)
On behalf of a unanimous Supreme Court, Justice Souter stated that "[o]ur past cases have recognized that the Supremacy Clause, U.S. Const., Art. VI, may entail pre-emption of state law either by express provision, by implication, or by a conflict between federal and state law. [Citations.] And yet, despite the variety of these opportunities for federal preeminence, we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of preemption with the starting presumption that Congress does not intend to supplant state law." (Travelers, supra, 514 U.S. at p. 654,115 S.Ct. 1671.)
The Travelers court recognized that the limiting phrase, "insofar as they ... relate to," contained in 29 United States Code section 1144(a), "does not give us much help" in delineating the limitations of ERISA preemption. (Travelers, supra, 514 U.S. at p. 655, 115 S.Ct. 1671.) The court decided that it must look "beyond the unhelpful text" of 29 United States Code section 1144(a) and "look instead to the objectives of the ERISA statute." (Id. at p. 656, 115 S.Ct. 1671.) Travelers declared that the phrase "relate to," contained within 29 United States Code section 1144(a), must be considered practically and not stretched indeterminately. (Id. at p. 655, 115 S.Ct. 1671.) Accordingly, the high court developed new tests to narrow the scope of ERISA preemption of state laws.
The Travelers court explained that 29 United States Code section 1144(a) preempts only those state laws having such a "connection with or reference to" employee benefit plans that they affect the nature of such plans and the objectives of ERISA. (Travelers, supra, 514 U.S. at p. 656, 115 S.Ct. 1671.) Two years later, the Dillingham court further narrowed the scope of this test by stating that preemption occurs only "[w]here a State's law acts immediately and exclusively upon ERISA plans, ... or where the existence of ERISA plans is essential to the [State] law's operation." (Dillingham, supra, 519 U.S. at pp. 325, 334, 117 S.Ct. 832 [ERISA does not preempt California's prevailing wage law permitting lower wages for apprentices].) Thus, the high court sought to avoid preemption of state laws having only a "`... tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.'" (Travelers, supra, at p. 661, 115 S.Ct. 1671.)
By narrowing the scope of ERISA preemption, Travelers reminded us that the objective of Congress in passing ERISA was to insure national uniformity in the administration of the employee benefit plans that it covers. (Travelers, supra, 514 U.S. at pp. 656-657, 115 S.Ct. 1671; Dillingham, supra, 519 U.S. at pp. 326-330, 117 S.Ct. 832.) As stated, supra, it is presumed that Congress does not *556 intend to supplant state law. (Travelers., supra, at pp. 654-655, 115 S.Ct. 1671; Dillingham, supra, at pp. 331-332, 117 S.Ct. 832.) This is particularly true in fields of traditional state regulation. (Travelers, supra, at pp. 655-656, 115 S.Ct. 1671 [permitting state law to impose surcharges on hospital patients with commercial coverage through ERISA plans]; see also Metropolitan Life Ins. Co. v. Massachusetts, supra, 471 U.S. at p. 740, 105 S.Ct. 2380.) Indeed, in areas of traditional state regulation, the high court has assumed that such state powers "`... were not to be superseded by the Federal Act [ERISA] unless that was the clear and manifest purpose of Congress.' [Citations.]" (Travelers, supra, at p. 655, 115 S.Ct. 1671.)
Federal circuit courts have concluded that the payment of workers is an area traditionally regulated by the states. "It is well settled that wages are a subject of traditional state concern, and are not included in ERISA's definition of `employee benefit plan.' Thus, regulation of wages per se is not within ERISA's coverage." (WSB Elec, Inc. v. Curry (9th Cir. 1996) 88 F.3d 788, 791, 796 [ERISA does not preempt California's prevailing wage law].) This is true even where a wage rate statute is measured by reference to both prevailing cash wages and fringe benefit contributions in localities. (Id. at p. 793 [re Cal. law]; accord, Keystone Chapter, Associated Builders arid Contractors, Inc. v. Foley (3d Cir.1994) 37 F.3d 945, 957; Minnesota Chapter of Associated Builders and Contractors, Inc. v. Minnesota Dept. of Labor and Industry (8th Cir.1995) 47 F.3d 975, 980; Department of Industrial Relations v. Nielsen Construction Co. (1996) 51 Cal.App.4th 1016, 1020, 1025, 1030, 59 Cal.Rptr.2d 785.) Such state laws do not tell employers how to write ERISA plans nor do they create conditions on writing such plans. (Operating Engineers Health & Welfare Trust Fund v. JWJ Contracting Co. (9th Cir.1998) 135 F.3d 671, 679 (JWJ); Dillingham, supra, 519 U.S. at pp. 328, 334, 117 S.Ct. 832 [re California's prevailing wage law permitting lower wage rates for apprentices].) They do not regulate the administration of ERISA plans. Accordingly, the United States Supreme Court has refused to preempt traditional state statutes regarding wages; such laws are too tenuously related to ERISA. To allow preemption of such laws would do "grave violence to our presumption that Congress intended nothing of the sort." (Dillingham, supra, at p. 334, 117 S.Ct. 832.)
Acknowledging that recent rulings of the United States Supreme Court have narrowed the scope of ERISA preemption, federal circuit courts have permitted state actions in cases similar to El Capitan. In JWJ, JWJ signed CBAs to employ union members pursuant to public works contracts and posted bonds under Arizona state law to secure trust funds administered under ERISA for the benefit of the union employees. (135 F.3d at p. 678.) When JWJ failed to pay contributions to the trust funds, the funds sued in district court to enforce the bonds. The district court held that ERISA preempted the claim. The Ninth Circuit reversed, holding that the state law "regulates an area that Congress has traditionally left to the states...." (Ibid.) JWJ explained that the relationship of ERISA to such a state law is too attenuated to require preemption. (Id. at pp. 678-679.) Indeed, the JWJ court expressly recognized that Travelers reduced the scope of ERISA preemption. (Id. at p. 679; accord, Carpenters Local Union No. 26 v. U.S. Fidelity & Guar. Co. (1st Cir.2000) 215 F.3d 136, 138, 139-140 (U.S.Fidelity) [individuals and union sued on bond after employer defaulted on contributions to trust for fringe benefits for *557 union employees made pursuant to CBA]; Southern California IBEW-NECA Trust Funds v. Standard Indus. Elec. Co. (9th Cir.2001) 247 F.3d 920, 924-925 (Standard Industrial).)
We recognize that we are bound by decisions of our Supreme Court. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 20 Cal.Rptr. 321, 369 P.2d 937.) But, El Capitan relied on United States Supreme Court precedents predating 1991 to conclude that ERISA preempts section 3111. (El Capitan, supra, 53 Cal.3d at pp. 1048-1049, 282 Cal.Rptr. 277, 811 P.2d 296.) In the ensuing decade, the United States Supreme Court dramatically altered its view of ERISA preemption. When, by unanimous decision, the United States Supreme Court alters its interpretation of the preemptive effect of the federal law at issue before us, we are bound by the more recent decision. (Elliot v. Albright (1989) 209 Cal.App.3d 1028, 1034, 257 Cal.Rptr. 762; see Travelers, supra, 514 U.S. at p. 649, 115 S.Ct. 1671; Dillingham, supra, 519 U.S. at p. 319, 117 S.Ct. 832.) And, while the decisions of lower federal courts are not binding on state courts, we accord them great weight. (People v. Bradley (1969) 1 Cal.3d 80, 86, 81 Cal.Rptr. 457, 460 P.2d 129; People v. Superior Court (Moore) (1996) 50 Cal. App.4th 1202, 1211, 58 Cal.Rptr.2d 205; Elliot, supra, at p. 1034, 257 Cal.Rptr. 762.)
We believe that JWJ, U.S. Fidelity and Standard Industrial reflect the current view of the United States Supreme Court concerning the reach of ERISA and that we should follow them. In Standard Industrial, the Ninth Circuit specifically referred to El Capitan and stated that because "the analysis of ERISA's preemption has changed in accordance with Travelers, previous cases must be reevaluated in light of Travelers ` dictates." (Standard Industrial, supra, 247 F.3d at p. 927; see also Hawai'i Laborers' Trust Funds v. Maui Prince Hotel (1996) 81 Hawai'i 487, 918 P.2d 1143, 1152-1153 (Hawai'i Trust Funds).) Standard Industrial further stated that "the breadth of federal preemption which governed ... decisions prior to Travelers is no longer applicable." (Id. at p. 929.) As Travelers explained, "[i]f `relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for `[r]eally, universally, relations stop nowhere,' H. James, Roderick Hudson xli (New York ed., World's Classics 1980)." (Travelers, supra, 514 U.S. at p. 655, 115 S.Ct. 1671.) Such interpretations of ERISA would read Congress' words of limitation as mere sham and eviscerate the presumption against preemption into insignificance. Travelers and Dillingham rejected such broad interpretations of ERISA preemption. Now the Supreme Court requires preemption under ERISA only when a state's laws act immediately and exclusively upon ERISA plans or when the existence of ERISA plans is essential to the law's operation.
The state statute at issue here, section 3110, does not mention employee benefit trust funds; its provisions assure recovery of any wages for labor, not just those which may be affected by ERISA plans. (Cf. EklecCo v. Iron Workers Locals W, 361 & 417 Union Sec. Funds (2d Cir.1999) 170 F.3d 353, 357, which fails to follow Travelers regarding a New York lien statute regarding liens for "`any trust fund to which benefits and wage supplements are due or payable'" (italics omitted).) Section 3110 is a state law of general applicability which creates no rights or restrictions concerning the administration or funding of ERISA plans. Therefore, it matters not that the remedy provided by *558 section 3110foreclosure on the landowner's propertyis not a remedy provided to redress violations of ERISA. (See 29 U.S.C. § 1132(d)(2).) Section 3110 is consistent with Congressional support for state remedies assuring payment of wages to workers. (Hawai'i Trust Funds, supra, 918 P.2d at pp. 1154-1157.)
Accordingly, we conclude that enforcement of the instant lien under section 3110 is not preempted by ERISA. (Hawai'i Trust Funds, supra, 918 P.2d at pp. 1154-1157.) Appellants are entitled to pursue the state remedy supplied by section 3110 as required by our state Constitution. (Art. XIV, § 3.)
The judgment is reversed. The trial court is directed to overrule the demurrer. Costs to appellants.
We concur: GILBERT, P.J., and COFFEE, J.
NOTES
[1] All statutory reference are to the Civil Code unless otherwise stated.
[2] Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1144(a).)